**STATE BOARD OF TAX COMMISSIONERS, Appellant (Respondent Below),**

v.

**NEW CASTLE LODGE # 147, LOYAL ORDER OF MOOSE, INC., Appellee (Petitioner Below).**

No. 49S10–0011–TA–720.

Supreme Court of Indiana.

April 12, 2002.

Steve Carter, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

B. Keith Shake, Karen Ball Woods, Henderson Daily Withrow & Devoe, Indianapolis, IN, Steven G. Hedges, Muncie, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

In 1992, the New Castle Moose Lodge submitted the same anecdotal type of information regarding its charitable efforts that earned it a sixty-seven percent property tax exemption in 1988. A State Board of Tax Commissioners hearing officer updated a 1988 analysis of hours of charitable use of the facility and recommended partial exemption, but the Board denied any exemption for stated reasons having little to do with the statutory "predominant use" test.

The Tax Court reversed, holding that the Lodge's predominant use was charita-

ble. We granted the Board's petition for review, in order to examine the standards applicable to a non-profit's claim that its property is predominantly used for charitable purposes and thus exempt.

### Standard of Review

■■■ Taxpayers bear the burden of proving entitlement to tax exemptions. *See Dep't of State Revenue v. Safayan,* 654 N.E.2d 270 (Ind.1995). Judicial review of an administrative decision denying tax exemption "is limited to whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal principle." *See State Bd. of Tax Comm'rs v. Jewell Grain Co.,* 556 N.E.2d 920, 921 (Ind.1990) (citation omitted).

■■ This Court reviews Tax Court decisions under the "clearly erroneous standard" provided in Indiana Trial Rule 52(A). *State Bd. of Tax Comm'rs v. Indianapolis Racquet Club, Inc.,* 743 N.E.2d 247, 249 (Ind.2001).

### The Statutory Framework

We begin with a summary of relevant statutes, to provide context for the facts that follow. Indiana Code Ann. § 6–1.1–10–16(a) (Burns 1989) says, "All or part of a building is exempt from property taxation if it is owned, occupied, and used by a person for educational, literary, scientific, religious, or charitable purposes."

In 1983 the legislature adopted a "predominant use" test for determining whether property qualifies for exemption under Ind.Code Chapter 6–1.1–10. *See* 1983 Ind. Acts 66. Indiana Code Ann. § 6–1.1–10–36.3 (Burns 1989) says, in relevant part:

> (a) For purposes of this section, property is predominantly used or occupied for one or more stated purposes if it is used or occupied for one or more of those purposes during more than fifty percent (50%) of the time that it is used or occupied in the year that ends on the assessment date of the property.

> (b) If a section of this chapter states one or more purposes for which property must be used or occupied in order to qualify for an exemption, then the exemption applies as follows: ...

> (3) Property that is predominantly used or occupied for one or more of the stated purposes ... is exempt under that section from property tax on the part of the assessment of the property that bears the same proportion to the total assessment of the property as the amount of time that the property was used or occupied for one or more of the stated purposes during the year that ends on the assessment date of the property bears to the amount of time that the property was used or occupied for any purpose during that year.

> (4) Property that is predominantly used or occupied for a purpose other than one of the stated purposes is not exempt from any part of the property tax.

Indiana Code Ann. § 6–1.1–11–3(a) (Burns 1989) requires a property owner seeking property tax exemption to file an application with the county auditor. Under subsection (c), exemption applications must contain:

> (1) A description of the property claimed to be exempt in sufficient detail to afford identification.

> (2) A statement showing the ownership, possession, and use of the property.

> (3) The grounds for claiming the exemption.

(4) The full name and address of the applicant.

(5) Any additional information which the state board of tax commissioners may require.

Ind.Code Ann. § 6–1.1–30–10 (Burns 1989) authorizes the Board to delegate its powers, including the power to serve as a hearing officer in appeals, to field representatives or supervisors. With respect to such a review, the hearing officer:

[S]hall submit a written report of his findings to the state board of tax commissioners. After reviewing the report, the board may take additional evidence or hold additional hearings. The board shall base its final decision on the report, any additional evidence taken by the board, and any records that the board considers relevant.

Ind.Code Ann. § 6–1.1–30–12 (Burns 1989).[1]

**Facts and Procedural History**

New Castle Lodge # 147, Loyal Order of Moose, Inc. is a fraternal organization qualified under § 501(c)(8) of the Internal Revenue Code.[2] The Lodge owns a 10,400 square foot building with a meeting/ballroom, game room, dining room, lounge, kitchens, and common areas such as hallways and restrooms.

*A. The Lodge's 1988 Exemption Application.* In 1988, the Lodge applied for property tax exemption, but the Henry County Board of Review denied the request. The Lodge appealed to the State Board of Tax Commissioners.

In its review, the Board relied in part on a "Room by Room Analysis of Exempt (Charitable) Activity." (Pet. Exh. 7.) This analysis showed 1,080 total hours of meeting/ballroom use during the year, of which 840 hours (seventy-eight percent) were for charitable purposes. The game room, dining room, lounge and kitchens were primarily used for social purposes and were not entitled to any exemption. The garage was deemed entirely taxable, and the common areas were deemed entirely exempt.[3] The parking lot and personal property were both treated as partially exempt based on the aggregate exemption percentage calculated for the building.

The overall exemption percentage allowed by the Board, based on the foregoing analysis, was sixty-seven percent. In its findings of fact, the Board noted that Lodge members "devote a substantial amount of time to charitable activities," and that the Lodge allowed its ballroom to be used without charge for civic activities

---

1. All of these statutes remained in effect without substantial change through 2001. Effective January 1, 2002, the Board's responsibilities were divided between two newly-created agencies: the Department of Local Government Finance, which has tax collection authority (*see* Ind.Code Ann. §§ 6–1.1–30–1.1, 14 (Burns 2001)), and the Indiana Board of Tax Review, which will review property tax appeals (*see* Ind.Code Ann. §§ 6–1.5–1–3, 4–1 (Burns 2001)).

2. Internal Revenue Code § 501(c)(8) allows exemption from federal income taxes for fraternal beneficiary societies, orders, and asso-

ciations that meet specified criteria such as operating under a lodge system.

3. In its conclusions of law, the Board said, "common areas are considered exempt as is the land under" Ind.Code Ann. § 6–1.1–10–16 (Burns 1989). (Pet. Exh. 7.) This statute applies only to land: "A tract of land ... is exempt from property taxation if: (1) A building which is exempt under subsection (a) or (b) is situated on it; and (2) The tract does not exceed: ... (B) Fifteen (15) acres in all other cases." I.C. § 6–1.1–10–16. The rationale for treating the building common areas as fully exempt is therefore unclear.

such as a Muscular Dystrophy Association Telethon.[4] (*Id.*)

In its conclusions of law, the Board cited cases in which organizations that donated three percent or less of their gross income to charity were denied charitable property tax exemptions.[5] (*Id.*) The Board went on to say:

> The cases cited do not specifically indicate the percentage of gross income from the year in question that must be devoted to philanthropic endeavors before the organization may be considered to be charitable. However, the cases do establish that the annual donation/gross income percentage is of primary consideration when making the determination.... [The Lodge] donates 7.09% of its revenues to charity. This, along with the organization's other charitable activities qualifies the Lodge as charitable.

(*Id.*) The Board's final determination was dated September 25, 1992.

*B. The Lodge's 1992 Exemption Application.* Even before the 1988 proceeding came to a conclusion, it was time to reapply, so in May 1992, the Lodge again submitted the standard property tax exemption request form prescribed by the Board. Again, the Henry County Board of Review denied the application, and again the Lodge appealed.

Board Hearing Officer E. Wayne Hudson visited the Lodge on February 28, 1995. He updated the "Room by Room Analysis of Exempt (Charitable) Activities" using an identical approach to that used for 1988.[6] (Pet. Exh. 6.) He also considered other written evidence the Lodge submitted: its constitution, by-laws, and articles of incorporation; its 1991 federal Return of Organization Exempt From Tax; and its 1992 monthly member newsletters. He recommended an exemption of approximately sixty-three percent, based on the bottom line of the updated "Room by Room Analysis." (*See* Pet. Exh. 5, 6.)

The Board rejected this recommendation and denied the Lodge any exemption. It found as fact that the Lodge newsletter described only social activities and "ma[de] no reference to charitable activities." (Pet. to App. Exh. 4.) It also found as fact that all 1,110 hours the meeting/ballroom was used were for member meetings and "purely social functions." (*Id.*)

In its conclusions of law, the Board cited *Saint Mary's Medical Center v. State Board of Tax Commissioners,* 534 N.E.2d

---

4. This finding seems to contradict the next finding:

> The meeting/ballroom is used approximately 1080 hours per year. The bulk of this time is used for meetings of the Lodge and meetings of the Women of the Moose. The balance of the time used is for purely social functions—i.e[.] Saturday Night dances. All these activities are for members and members' families only.

(*Id.*)

5. *State Bd. of Tax Comm'rs v. Fraternal Order of Eagles, Lodge No. 255,* 521 N.E.2d 678 (Ind.1988); *Sahara Grotto & Styx, Inc. v. State Bd. of Tax Comm'rs,* 147 Ind.App. 471, 261 N.E.2d 873 (1970); *Indianapolis Elks Bldg. Corp. v. State Bd. of Tax Comm'rs,* 145 Ind. App. 522, 251 N.E.2d 673 (1969). Both parties agree that none of these cases applied the predominant use test of Ind.Code § 6–1.1–10–36.3. (Appellant's Br. at 12–13, Appellee's Br. at 9.) *Fraternal Order of Eagles, Lodge No. 255,* 521 N.E.2d 678, decided in 1988, dealt with a March 1, 1983 assessment that predated enactment of the predominant use standard. *See* 1983 Ind. Acts 66 (approved Apr. 14, 1983).

6. Hudson apparently began with the typewritten analysis from 1988 and simply "whited out" amounts to be updated and wrote in the new amounts manually. (Pet. Exh. 6.) He updated the total hours of meeting/ballroom use to 1,110 hours but for reasons not disclosed in the record left the typewritten figure "840 hrs." of charitable use from 1988 intact. (*Id.*)

277 (Ind.Tax 1989), *aff'd,* 571 N.E.2d 1247 (Ind.1991), for the proposition that lodge facilities do not qualify for exemption if used by "others" for any reason. (Pet. to App. Exh. 4.) It cited the same cases as in 1988 as support for the proposition that up to three percent charitable contributions do not justify tax exemption, and concluded that the Lodge's four percent 1992 contribution rate did not qualify it for charitable exemption. (*Id.*)

The Lodge appealed to the Indiana Tax Court. *See New Castle Lodge # 147, Loyal Order of Moose, Inc. v. State Bd. of Tax Comm'rs,* 733 N.E.2d 36 (Ind.Tax 2000), *review granted,* 741 N.E.2d 1260 (2000). It presented evidence by its tax return preparer that charitable contributions were in fact substantially greater than the four percent reflected on the return. (Appellee's App. at 52–63.) The Tax Court held that the Lodge used its property predominantly for charitable purposes and remanded with instructions to the State Board to conduct further proceedings to determine the exact exemption allowed.[7] *New Castle Lodge # 147,* 733 N.E.2d at 40.

**The Task of Supporting an Exemption**

*A. The Board's Findings and Conclusions.* Two of the Board's findings of fact regarding the 1992 exemption request are not supported by substantial evidence.

First, the Board found that the Lodge's newsletter made no reference to charitable activities. (Pet. to App. Exh. 4.) This is simply wrong. The 1992 newsletters mention, among other things, a "Moose Bar Buck Campaign" with a goal of raising $1,000 for Easter Seals, (Appellee's App.

at 116), a donation of $1,000 to the local Disabled American Veterans, (*Id.* at 121), a campaign to raise $10,000 to repair the city emergency warning system and add a new siren in a section of the city inadequately covered by the existing system, (*Id.* at 146), and delivery of food and supplies to victims of Hurricane Andrew, (*Id.* at 152).

This error is of little significance because the content of the Lodge's newsletter relates to charitable use of the facility only indirectly, if at all.[8]

■ Second and more important, the Board found:

The meeting/ballroom is used approximately 1,110 hours per year. The bulk of this time is used for meetings of the Lodge and meetings of the Women of the Moose. The balance of the time used is purely social functions—i.e. Saturday night dances. All these activities are for members and members' families only.[9]

(Pet. to App. Exh. 4.) This finding contradicts the hearing officer's analysis, which indicated that seventy-six percent of the total 1992 meeting/ballroom hours were for charitable purposes. (Pet. Exh. 6.)

Although the statute directs the Board to base its decision on the hearing officer's report plus "any additional evidence taken by the board, and any records that the board considers relevant," Ind.Code Ann. § 6–1.1–30–12 (Burns 1989), the Board did not cite any additional evidence or records that would explain why it rejected the

---

7. The Lodge did not argue on appeal that it is entitled to exemption under Ind.Code Ann. § 6–1.1–10–23 (Burns 1989), which applies to fraternal beneficiary associations.

8. Had a usage log been maintained, the newsletters could provide supporting evidence that

charitable activities listed on the log actually occurred.

9. This wording repeats the 1988 finding verbatim, with only the usage figure changed to reflect the updated "Room by Room Analysis" figure.

hearing officer's analysis.[10] This finding is therefore more problematic because it is the only Board finding dealing with facility usage, which is necessarily the focus of the predominant use standard.

■ We next turn to the Board's conclusions of law. Finding 5. said, "To the extent Lodge facilities are used by others, for whatever reason, the facilities do not qualify for exemption." (Pet. to App. Exh. 4.) This rule is not supported by the case the Board cites [11] or by any other law.[12] *See Alte Salems Kirche, Inc. v. State Bd. of Tax Comm'rs*, 733 N.E.2d 40, 44 (Ind. Tax 2000) ("According to the State Board, 'The provision of facilities to other organizations or groups for meetings or gatherings at no cost does not constitute a charitable act.' The State Board is mistaken.").

Board Conclusion 8. said:

[T]he cases do establish that the annual donation/gross income percentage is of primary consideration in making the [exemption] determination.... The Lodge donates 4% of its revenues to charity. This alone is not adequate to qualify for exemption as charitable. Therefore, the real and personal property owned by the Lodge is 100% subject to property taxa-

tion for the March 1, 1992 assessment year.

(Pet. to App. Exh. 4.) This misstates and misapplies the law. Although charitable giving might serve as evidence to support claimed charitable use of the facility, the statutory test since 1983 has been predominant use of the facility, not distribution of income for charitable purposes.

*B. The Board's Argument.* The Board now argues that:

[T]he Moose Lodge failed [the predominant use] test because it failed to prove that its facility was used charitably for more than 50% of the time during the relevant tax year. Instead, the Moose Lodge concentrated on showing what percentage of its income it donated to charity. Because it failed to address the proper standard, the Moose Lodge failed to prove its entitlement to exemption. Moreover, nothing in the evidence can be construed to show that the Moose Lodge's facility was used more than 50% of the time for charitable purposes during the relevant tax year.

(Appellant's Br. at 6.)

This position is disingenuous. The Lodge did indeed focus on the wrong target, but it did so in response to the

---

**10.** At the Tax Court proceeding, the Lodge offered testimony that during 1992 some meeting/ballroom dances were fundraisers for the tornado siren project; that twice yearly the Lodge brings in senior citizens from nursing homes for free lunch and bingo; and that each September the Lodge holds "Back to School Bingo" for children of the community, with prizes for all. (Appellee's App. at 25–26, 49–50.)

The Board presented only one witness, Hearing Officer Hudson. (Appellee's App. at 76.) The deputy attorney general representing the Board elicited Hudson's testimony that he "just basically updated the numbers" from 1988 "[b]ecause that's [the] way I have been trained: That if nothing has changed from the previous exemption year to the one

in question, that there probably would be no reason for anything to change as far as the exemption is concerned." (*Id.* at 82–83.) The Board offered no testimony as to why it found no charitable use of the meeting/ballroom; only Hudson's personal opinion that despite filing a report to the contrary, he believed the Lodge's predominant use was "social and recreational." (*See id.* at 76–86.)

**11.** *Saint Mary's Med. Ctr.*, 534 N.E.2d 277.

**12.** Furthermore, such a per se rule would make little sense. If, for example, the Lodge allowed a qualified charitable relief organization to temporarily house displaced disaster victims in its facility, it would receive no credit for charitable use under this approach.

Board's declarations that in both 1988 and 1992 charitable contribution levels were "of primary consideration." (Pet. to App. Exh. 4.)

We conclude, as did the Tax Court, that the State Board's refusal of any exemption was an abuse of discretion.

■ *C. The Taxpayer's Burden.* This leaves us with the question whether, under the facts presented, a taxpayer that has made a misdirected evidentiary showing nonetheless deserves some exemption. The Lodge presented mostly anecdotal evidence, including newsletters that referred to a few charitable projects and a tax return that listed some charitable donations. (Pet. Exh. 4, 9.) It did not offer any sort of log of the time the facility was used in furtherance of these charitable efforts versus total time used.

■ Taxpayers may not avoid their burden of proof by "mak[ing] a de minimis showing and then forc[ing] the State Board to support its decisions with detailed factual findings." *Hoogenboom–Nofziger v. State Bd. of Tax Comm'rs,* 715 N.E.2d 1018, 1025 (Ind.Tax 1999). The Board is therefore correct in saying the Lodge failed to meet its burden under the predominant use standard.

■ *D. The Board's Responsibility.* Administrative decisions must, however, be based on ascertainable standards in order to be fair and consistent rather than arbitrary and capricious. *See State Bd. of Registration for Prof'l Eng'rs v. Eberenz,*

723 N.E.2d 422, 429 (Ind.2000) (quoting *State Bd. of Registration for Land Surveyors v. Bender,* 626 N.E.2d 491, 495–96 (Ind.Ct.App.1993)); *see also Boaz v. Bartholomew Consol. Sch. Corp.,* 654 N.E.2d 320, 323 (Ind.Tax 1995) ("Under Indiana's ascertainable standards rule, all administrative decisions must be in accord with previously stated, ascertainable standards."). Such standards "give fair warning as to what the agency will consider in making its decision." *Podgor v. Ind. Univ.,* 178 Ind.App. 245, 258, 381 N.E.2d 1274, 1283 (1978) (citations omitted).[13]

The statutory focal point—predominant use of the facility—seems fairly straightforward, and the Board would be fully justified in placing the onus on taxpayers to produce facility usage reports in greater detail and with better supporting documentation than was done here. The Board may not, however, hide the ball by consistently citing charitable giving levels as the primary focus, then arguing for application of a different (albeit correct) statutory standard only on appeal.

**A Pragmatic Remedy**

In *State ex rel. State Board of Tax Commissioners v. Marion Superior Court,* 271 Ind. 374, 379, 392 N.E.2d 1161, 1166 (1979), we said, "The sole relief a court may grant when an administrative decision is found to be unlawful is to vacate the decision and remand the matter to the agency for a further determination. This rule applies likewise to actions by the State Tax Board." We cited, among other authorities, Indiana Code Ann. § 6–1.1–

---

13. The Board is of course entitled to reasonable latitude in carrying out its responsibilities. *See, e.g., State Bd. of Tax Comm'rs v. Garcia,* No. 71S10–0108–TA–366, —— N.E.2d ——, April 12, 2002, where taxpayers built a home more luxurious than any "comparables" pictured in the Board's assessment manual. The Board extrapolated from existing standards to assess the home at an "A + 6" grade as contemplated by Board regulations,

and allowed the taxpayer a reasonable opportunity to respond to its assessment methodology. We upheld this appropriate exercise of the Board's discretion.

Here, in contrast, the Board applied an incorrect exemption standard to a fraternal lodge that was used for the types of activities in which such organizations commonly engage. The Board's discretion does not extend to applying an erroneous legal standard.

15–8, which in 1992 required remand to the Board "for reassessment and further proceedings in accordance with law" when a court reverses a Board decision. 271 Ind. at 379, 392 N.E.2d at 1166.

■ We recognize, however, the practical difficulty the Lodge would face in trying to prove charitable facility usage ten years after the fact in accordance with a different standard than the one the Board led the Lodge to originally document. Equity demands a remedy that does not put the taxpayer at such an agency-created disadvantage.

We note also that the record does contain some evidence of facility usage. Hearing Officer Hudson testified that he prepared a 1992 usage analysis similar to the 1988 analysis because nothing had changed in the Lodge's operations. His figures bear this out, showing only a small decline in charitable usage percentage (from sixty-seven percent in 1988 to sixty-three percent in 1992). The Board has cited no evidence in this proceeding to justify its rejection of the hearing officer recommendation.

We therefore conclude that the available evidence satisfies the "predominant use" requirement of the statute and entitles the taxpayer to partial exemption. We remand to the Board for a final determination regarding the Lodge's 1992 exemption application, with evidence limited to the hearing officer's recommendation.

### Conclusion

We affirm the remand ordered by the Tax Court, subject to the above directive.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., not participating.