**THE INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGE-MENT, Appellant–Defendant,**

v.

**CONSTRUCTION MANAGMENT ASSOCIATES, L.L.C., Hilltop Farms I.L.P., and Hilltop Farms II, L.P., Appellees–Plaintiffs,**

and

**Moss Well Drilling, Inc.,[1] Appellee–Defendant.**

**No. 52A02–0711–CV–994.**

Court of Appeals of Indiana.

July 18, 2008.

1. Appellee–Defendant Moss Well is not seeking relief on appeal and has not filed a brief. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

Steve Carter, Attorney General of Indiana, Sierra L. Cutts, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

VAIDIK, Judge.

### Case Summary

The Indiana Department of Environmental Management ("IDEM") is charged with enforcing the federal Safe Drinking Water Act ("SDWA") within Indiana. Pursuant to federal regulations, Indiana has enacted laws and regulations consistent with the SDWA to ensure safe drinking water in public water systems. Here, IDEM informed the Hilltop Farms Housing Complex ("Complex") that it maintained a public water system and was therefore required to comply with water testing requirements. IDEM's interpretation that separate wells unconnected to one another but each serving separate buildings in an apartment complex together constitute a public water system is reasonable. We therefore reverse the trial court that held otherwise.

### Background

Congress passed the SDWA in 1974 to regulate the nation's public drinking water supply. States can be delegated primary enforcement responsibility, or primacy, for the SDWA within their borders by adopting and implementing drinking water regulations "no less stringent than the national primary drinking water regulations" and sufficient procedures for enforcement. 42 U.S.C.A. § 300g–2(a). After fulfilling these requirements, Indiana applied for primacy for the SDWA within Indiana, and the Environmental Protection Agency granted it. *See* Public Water System Supervision Program: Primacy Delegation for the State of Indiana, 56 Fed.Reg.

24192–01 (May 29, 1991). Thereafter, IDEM became the agency within Indiana responsible for overseeing and enforcing the SDWA. Ind.Code § 13–13–5–1(1).

As part of Indiana's implementation of the SDWA, the Indiana Water Pollution Control Board promulgated 327 Indiana Administrative Code 8–2–1(60) ("327 I.A.C. 8–2–1(60)"), which provides the definition of a public water system. It states, in pertinent part:

> "Public water system" means a public water supply for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves at least twenty-five (25) individuals daily at least sixty (60) days out of the year. The term includes any:
>
> (A) collection, treatment, storage, and distribution facilities under control of the operator of such system, and used primarily in connection with such system; and
>
> (B) collection or pretreatment storage facilities not under such control that are used primarily in connection with such system.

The case before us pertains to whether the water systems created during the development of the Complex fall within this definition of a public water system.

Construction Management Associates, L.L.C. ("CMA") constructed the Complex in Miami County, Indiana, in two phases.

On February 14, 2000, CMA entered into a contract with Moss Well Drilling, Inc. ("Moss Well") to drill six separate wells to provide water for each of the six apartment buildings of Hilltop Farms I, L.P. ("Hilltop Farms I"). On May 20, 2003, CMA entered into another contract with Moss Well to drill six separate wells to provide water for each of the six apartment buildings of Hilltop Farms II, L.P. ("Hilltop Farms II"). Each well services one apartment building. Each apartment building contains eight apartments, with a total of forty-eight apartments in each phase. Hilltop Farms I and II are located side by side, separated only by a roadway.

In a letter dated April 1, 2005, IDEM informed the Complex that it maintained a public water system, assigned the Complex a Public Water Supply Identification ("PWSID") number, and notified the Complex that it was thus required to comply with water testing requirements. Appellant's App. p. 61. Although IDEM initially sought to treat the Complex as maintaining one public water system, it now treats Hilltop Farms I and II as maintaining two public water systems in response to a request from Hilltop Farms I and II.[2] Tr. p. 4–5. On April 14, 2006, CMA and Hilltop Farms I and II filed a Complaint and Action for Declaratory Judgment against IDEM and Moss Well.[3] Regarding IDEM, the complaint and declaratory judgment action requested that the trial court find that the Complex did not maintain a public

---

2. The Affidavit of Mary E. Hoover, who is a Senior Environmental Manager of IDEM, contends that Hilltop Farms I and II requested two separate PWSID numbers, Appellant's App. p. 98, and in her deposition, Hoover stated, "[Hilltop Farms I and II] asked us to separate the two, because they have two separate companies, and for their billing, it is how they want it set up," id. at 223.

3. Regarding Moss Well, the complaint and declaratory judgment action requested that the trial court find Moss Well both negligent for advising CMA and Hilltop Farms I and II that Hilltop Farms I and II would not be designated as public water systems and in breach of contract for failing to install water operating systems that provided quality water to Hilltop Farms I and II. The trial court subsequently granted partial summary judgment in favor of Moss Well.

water system and enjoin IDEM from requiring the Complex to conduct water testing.[4] In turn, IDEM filed a motion for partial summary judgment claiming that six wells unconnected to one another but designed to serve six buildings of a phase of the Complex constitute a public water system. On May 9, 2007, the trial court denied IDEM's motion, observing that IDEM had adopted "additional standards" without going through the proper rulemaking channels, Appellant's App. p. 327, and finding that "whether 25 or more persons were served by any of the wells for at least 60 days" was an issue of material fact, *id.* at 328. IDEM subsequently asked the trial court to reconsider its ruling, and on September 17, 2007, the trial court denied IDEM's motion concluding that the Complex has twelve wells serving twelve buildings and that none of the wells have at least fifteen service connections and none of the buildings have at least twenty-five people. In other words, the trial court considered each building and well separately as if the buildings were not part of a phase of an apartment complex. The trial court then reasoned that IDEM had given no fair warning of its "additional standards" requiring wells in a phase of an apartment complex to be considered as one public water system. As such, the trial court concluded that the "additional standards" were given the force and effect of law without going through the rulemaking process. IDEM filed a motion to certify the trial court's order for interlocutory appeal pursuant to Indiana Appellate Rule 14(B), which the trial court granted. This Court subsequently accepted jurisdiction over this appeal.

## Discussion and Decision

 We initially note that CMA and Hilltop Farms I and II have failed to submit an appellees' brief. When an appellee does not file a brief, we have no obligation to undertake the burden of developing an argument on its behalf. *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind.2006). If the appellant's brief presents a case of prima facie error, we will reverse the trial court's judgment. *Id.* (citing *Gibson v. City of Indianapolis,* 242 Ind. 447, 448, 179 N.E.2d 291, 292 (1962)). Prima facie error in this context is defined as, "at first sight, on first appearance, or on the face of it." *Santana v. Santana,* 708 N.E.2d 886, 887 (Ind.Ct.App.1999) (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell,* 484 N.E.2d 989, 991 (Ind.Ct.App.1985)). If the appellant is unable to meet this burden, we will affirm. *Trinity Homes,* 848 N.E.2d at 1068.

IDEM raises two issues on appeal. First, IDEM contends that the trial court erred in denying its motion for partial summary judgment because the trial court failed to defer to IDEM's reasonable interpretation of a rule it is charged with enforcing. Second, IDEM contends that the trial court erred in denying its motion for partial summary judgment because the trial court erroneously concluded that IDEM had adopted "additional standards" to determine what constitutes a public water system.

When reviewing a grant or denial of summary judgment, the standard of review is the same as the standard governing summary judgment in the trial court: whether there is a genuine issue of materi-

4. Although the Complaint and Action for Declaratory Judgment frames the issue as whether the Complex maintains a public water system, Appellant's App. p. 12–13, the Plaintiff's Memorandum of Law and Opposition to Defendant, IDEM's, Motion for Partial Summary Judgment clearly states that the issue is whether Hilltop Farms I and II each maintain public water systems, *id.* at 182.

al fact and whether the moving party is entitled to judgment as a matter of law. *N. Ind. Pub. Serv. Co. v. Bloom,* 847 N.E.2d 175, 180 (Ind.2006) (citing *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan,* 728 N.E.2d 855, 858 (Ind.2000)). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Bushong v. Williamson,* 790 N.E.2d 467, 474 (Ind.2003). Summary judgment should be granted only if the evidence designated pursuant to Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Bloom,* 847 N.E.2d at 180 (citing *Gunkel v. Renovations, Inc.,* 822 N.E.2d 150, 152 (Ind.2005), *reh'g denied*). The party appealing a summary judgment ruling has the burden of persuading this Court that the grant or denial of summary judgment was erroneous. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 908 (Ind.2001). All evidence must be construed in favor of the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Bloom,* 847 N.E.2d at 180 (citing *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996)). Questions of law, however, are reviewed *de novo. DAP, Inc. v. Akaiwa,* 872 N.E.2d 1098, 1100–01 (Ind.Ct.App.2007) (citing *Tippecanoe County v. Ind. Mfrs. Ass'n,* 784 N.E.2d 463, 465 (Ind.2003)).

## I. Reasonable Interpretation

IDEM contends that the trial court erred in denying its motion for partial summary judgment because the trial court failed to defer to IDEM's reasonable interpretation of 327 I.A.C. 8–2–1(60), a rule IDEM is charged with enforcing. We agree.

We treat regulations in the Indiana Administrative Code in the same manner as statutes when asked to interpret a provision or term on appeal. *See State Bd. of Tax Comm'rs v. Two Mkt. Square Assocs. Ltd. P'ship,* 679 N.E.2d 882, 885 (Ind.1997); *see also Planned Parenthood of Ind. v. Carter,* 854 N.E.2d 853, 866 (Ind.Ct.App.2006). Statutory interpretation is a question of law reserved for the court and is reviewed *de novo. In re Guardianship of E.N.,* 877 N.E.2d 795, 798 (Ind.2007) (citing *Porter Dev., LLC v. First Nat'l Bank of Valparaiso,* 866 N.E.2d 775, 778 (Ind.2007)). *De novo* review allows us to decide an issue without affording any deference to the trial court's decision. *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000). When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction. *Ross v. Ind. State Bd. of Nursing,* 790 N.E.2d 110, 119 (Ind.Ct.App.2003). Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Robinson v. Gazvoda,* 783 N.E.2d 1245, 1250 (Ind.Ct.App.2003), *trans. denied.* If a term in a statute is undefined, we must "examine the statute as a whole and attribute the common and ordinary meaning to the undefined word, unless doing so would deprive the statute of its purpose or effect." *Consolidation Coal Co. v. Ind. Dep't of State Revenue,* 583 N.E.2d 1199, 1201 (Ind.1991); *see also Ind. Dep't of State Revenue v. Trump Ind., Inc.,* 814 N.E.2d 1017, 1021 (Ind.2004) (applying the ordinary meaning of "tangible personal property" for the purposes of the sales and use tax where the term was undefined in the statute).

When a statute is subject to different interpretations, the interpretation of the statute by the administrative agency

charged with the duty of enforcing the statute is entitled to great weight, unless that interpretation is inconsistent with the statute itself. *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000). If a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency. *See Sullivan v. Day,* 681 N.E.2d 713, 716 (Ind. 1997); *see also Ind. Family & Soc. Servs. Admin. v. Radigan,* 755 N.E.2d 617, 624 (Ind.Ct.App.2001) (Baker, J., concurring in result); *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Once a court determines that an administrative agency's interpretation is reasonable, it should "terminate[ ] its analysis" and not address the reasonableness of the other party's interpretation. *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n,* 695 N.E.2d 99, 105 (Ind.1998); *see also Radigan,* 755 N.E.2d at 624. Terminating the analysis recognizes "the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations." *Ind. Wholesale Wine,* 695 N.E.2d at 105.

Because IDEM is the administrative agency charged with the duty of enforcing 327 I.A.C. 8–2–1(60), we defer to its interpretation of that statute as long as the interpretation is reasonable. IDEM's interpretation of 327 I.A.C. 8–2–1(60) is that six wells unconnected to one another but each serving separate buildings of a phase of the Complex together constitute a public water system. IDEM's interpretation of 327 I.A.C. 8–2–1(60) hinges on the meaning of "system," a term undefined in the statute. In its brief, IDEM defines "system" as the "[o]rderly combination or arrangement, as of particulars, parts, or

elements into a whole; especially such combination according to some rational principle. Any methodic arrangement of parts. Method; manner; mode." Black's Law Dictionary 1300 (5th ed.1979). In applying this common and ordinary meaning of "system" to 327 I.A.C. 8–2–1(60), IDEM concludes that each phase of the Complex maintains a public water system "because the buildings, wells and equipment that it owns on a single parcel of land are an orderly arrangement of parts designed to provide drinking water for all the tenants in the apartment complex." Appellant's Br. p. 16. IDEM therefore reasons that each phase of the Complex has at least twenty-five individuals and thus each system of wells serving a phase of the Complex constitutes a public water system. Nevertheless, the trial court concluded that the Complex does not have a public water system, as defined by administrative rule, in that each well serves separate buildings and none of the wells have at least fifteen service connections and none of the buildings have at least twenty-five people.

We disagree with the trial court. IDEM's definition of "system," as it applies to 327 I.A.C. 8–2–1(60), is reasonable. Moreover, Webster's Third New International Dictionary defines "system" as "a group of devices or artificial objects forming a network or used for a common purpose." Webster's Third New International Dictionary 2322 (1993). Although this definition recognizes some systems as having a connection between individual objects, its second use of the disjunctive "or" clearly indicates that, when used for a common purpose, a connection between objects is not necessary. Under both Black's and Webster's definitions, the wells at Hilltop Farms I and II need not be connected to be considered "systems." IDEM's interpretation of 327 I.A.C. 8–2–1(60) is reason-

able because it applies the common and ordinary meaning of "system."

IDEM's interpretation of 327 I.A.C. 8–2–1(60) is also reasonable because it reflects Congress's intent in passing the SDWA. The House Report regarding judicial enforcement of the SDWA reflects Congress's objective of providing maximum protection of the public health:

> [The enforcement provisions of the SDWA] also provide[ ] that *the courts entertaining suits under this section may enter such judgment as the public health may require* taking into account the time necessary to comply and the availability of alternative water supplies. Therefore, the Committee intends that courts which are considering remedies in enforcement actions under this section are not to apply traditional balancing principles used by equity courts. Rather, *they are directed to give utmost weight to the Committee's paramount objective of providing maximum feasible protection of the public health* at the times specified in the bill.

H.R.Rep. No. 93–1185 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6454, 6476 (emphases added). The House Report also observes that the definition of a public water system "encompasses nearly all public accommodations, such as restaurants, motels, and trailer parks which serve the public." *Id.* at 6469. Congress thus intended the primary objective of the SDWA to be the maximization of the public health, even in locations with smaller public water systems. Noting Congress's intent, we conclude that the water systems maintained by Hilltop Farms I and II are clearly within the contemplation of the SDWA.

IDEM's interpretation of 327 I.A.C. 8–2–1(60) is reasonable because it applies the common and ordinary meaning of "system" and reflects Congress's intent to protect the public health. Therefore, we conclude

that IDEM is entitled to partial summary judgment in this matter.

## II. Additional Standards

■ IDEM also contends that the trial court erred in denying its motion for partial summary judgment because the trial court erroneously concluded that IDEM had adopted "additional standards" to determine what constitutes a public water system. Again, we agree with IDEM.

■ Decisions of administrative agencies must be based on ascertainable standards to protect against arbitrary and capricious decisions. *State Bd. of Tax Comm'rs v. New Castle Lodge # 147, Loyal Order of Moose, Inc.*, 765 N.E.2d 1257, 1264 (Ind.2002). Such standards are also necessary to give fair warning as to what factors agencies consider in making decisions. *Id.*

The trial court concluded in its decision on IDEM's motion to reconsider that the only ascertainable standard in 327 I.A.C. 8–2–1(60) is whether there are at least fifteen service connections or at least twenty-five people served daily more than sixty days a year. It stated that IDEM "appears to have . . . expanded [the definition of a public water system] to include some measure of ownership, or operation or proximity, without the usual process of notification and adoption as part of the regulatory scheme." Appellant's App. p. 10. Accordingly, the trial court ruled that IDEM provided no fair warning of the "additional standards" of ownership, operation, and proximity and therefore could not adjudicate the statuses of Hilltop Farms I and II as public water systems using those standards.

■ Although IDEM argues that ownership, operation, and proximity are standards included within the language of 327 I.A.C. 8–2–1(60), we decline to go so far and find only that the language of 327

I.A.C. 8–2–1(60) provides all the guidance necessary to allow CMA and Hilltop Farms I and II to determine that Hilltop Farms I and II constitute public water systems. Hilltop Farms I and II each have six wells providing water to six apartment buildings. No party has refuted that the six wells of Hilltop Farms I and the six wells of Hilltop Farms II each serve at least twenty-five individuals. These wells provide the public with water for human consumption through conveyances and regularly serve at least twenty-five individuals daily at least sixty days of the year. We disagree that there is any issue of fair warning in this case as no "additional standards" were imposed.[5]

We conclude that the trial court erred in denying IDEM's motion for partial summary judgment because the trial court failed to defer to IDEM's reasonable interpretation of 327 I.A.C. 8–2–1(60) and erro-

neously concluded that IDEM had adopted "additional standards" to determine what constitutes a public water system. The purpose of the SDWA is "to assure that water supply systems serving the public meet minimum national standards for protection of public health." 1974 U.S.C.C.A.N. at 6454. We will not allow a developer to thwart the purpose of the SDWA simply by drilling unconnected wells.

Reversed.

MAY, J., and MATHIAS, J., concur.

---

**5.** The trial court also noted in its order denying IDEM's motion to reconsider that an IDEM employee told Moss Well that "the plan of one well per building would not meet the definition of a public water system." Appellant's App. p. 9. Although Moss Well claims that oral communications with IDEM led it to the conclusion that the wells at Hilltop Farms I and II are not public water systems, these alleged communications are not enough to rely upon in order to negate IDEM's regulatory power.