## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 13 2020, 10:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew R. Lemme
Lemme Law Offices
New Albany, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of X.R., <br><br> Stephen Reid, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Julie Bodkin (Hodges), <br> *Appellee-Respondent.* | March 13, 2020 <br><br> Court of Appeals Case No. 19A-JP-1962 <br><br> Appeal from the Floyd Circuit Court <br><br> The Honorable J. Terrence Cody, Judge <br> The Honorable Julie Fessel Flanigan, Magistrate <br><br> Trial Court Cause No. 22C01-1011-JP-116 |

**Kirsch, Judge.**

[1] In this paternity action, Stephen Reid ("Father") and Julie Bodkin (Hodges) ("Mother") are parents of a thirteen-year-old son ("Child"). Father and Mother

shared joint legal custody of Child, but upon Mother's request, the trial court awarded sole legal custody of Child to Mother. Father appeals, raising three issues, which we consolidate and restate as:

I. Whether the trial court violated Father's right to due process; and

II. Whether there was sufficient evidence to support the trial court's decision to grant Mother sole legal custody of Child.

We affirm.

## Facts and Procedural History[1]

Child was born on November 28, 2005, and on November 3, 2010, Father filed a petition to establish his paternity over Child. *Appellant's App. Vol. 2* at 2. Through mediation, Father and Mother agreed that they should share joint legal custody of Child. Subsequent orders in 2015 and 2016 made some minor changes, but the joint legal custody arrangement remained the same.

In 2014 or 2015, Father was diagnosed with Attention Deficit Disorder ("ADD") and began taking both Adderall and Vyvanse for his condition. *Tr. Vol. 2* at 78-79. He took the medications for two or three years but stopped in

---

[1] We remind Father's counsel that Indiana Appellate Rule 46(A)(6)(a) requires that facts set forth in a brief "shall be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C)." In Father's twenty-seven-page brief, there are no citations to the Appendix and only five citations to the Transcript.

2017. *Id*. Father planned to see a doctor about getting back on medication because without the medication, he found it difficult to perform his job. *Id*. at 46, 79.

[5] Father and Mother were constantly at odds over how to parent Child, disagreeing on both serious and trivial issues. They could not agree on which school Child should attend. *Id.* at 11, 13. Mother did not approve of Father's use of corporal punishment on Child. Father would sometimes spank Child with a belt, which left bruises and welts on Child's buttocks. *Id*. at 17, 21-22, 38-39. This worried Mother and made her believe that Child needed to be protected from Father. *Id.* at 21-22. Mother and Father also disagreed about how closely Child should be supervised. Mother was upset that when Child was at Father's residence, Father would sometimes leave Child alone "for extended periods of time." *Id.* at 18; *see also id*. at 17, 19, 37, 51. Mother also believed Father discussed topics with Child that were inappropriate, such as drinking, "sexual things," and details about the legal proceedings between Mother and Father. *Id*. at 24-25. Mother and Father even disagreed about what kind of haircut Child should get. Father was angry that Mother allowed Child to get a haircut that was just a trim, so Father threatened to shave Child's head. *Id*. at 20-21.

[6] On August 8, 2018, Mother filed a Petition for Modification of Child Custody, or in the Alternative, Motion for School Selection ("Petition to Modify Custody"). *Appellant's App. Vol. 2* at 11. On May 15, 2019, about two weeks before the hearing on Mother's Petition to Modify Custody, Father's mother

died. He had purchased his mother's home about two years earlier, but he resided elsewhere even after he bought the home. *Tr. Vol. 2* at 45, 74. Once his mother died, Father moved into the home, and his fiancé sometimes stayed with him. *Id*. at 72-74.

[7] On May 31, 2019, the trial court conducted a hearing on Mother's Petition to Modify Custody. *Appellant's App. Vol. 2* at 14; *Tr. Vol. 2* at 2. As of the date of the hearing, Child was thirteen years old. *Tr. Vol. 2* at 17. Also, as of the date of the hearing, Father had pending charges for Level 6 felony stalking, disorderly conduct, and driving while suspended.[2] *Id*. at 21, 63, 76-77, 79-80. Both Father and Mother testified that they could not communicate with each other or make parenting decisions together. *Id.* at 10, 59.

[8] On direct exam, Mother's attorney asked her if she was seeking sole legal custody of Child. Mother said she was:

> Q. Okay. So, given your inability to make joint decisions, your inability to communicate, you believe it's in [Child's] best interest that the Court grant you sole legal custody. Is that your court request?
>
> A. That is my request.

---

[2] The record is clear that Father had a pending charge for Level 6 felony stalking, but it is less clear about whether Father had pending charges for both disorderly conduct and driving while suspended or just had a pending charge for one of those two offenses. *Tr. Vol. 2* at 75-79.

*Id.* at 30. Father did not lodge any objection to Mother's statement, nor did he make any statement to contradict that Mother's Petition to Modify Custody sought sole legal custody of Child. Later, during Father's testimony, Father's attorney noted that "[Mother] wants to change legal custody to herself . . . ." *Id.* at 56. Father's lawyer asked Father, "Is there anything else that you think the judge needs to know about [that]?" *Id.* Father's response merely gave reasons why Mother should not be granted sole legal custody and did not contradict that Mother's Petition to Modify Custody had requested sole legal custody. *Id.* at 57. At no time did Father's attorney argue that Mother's request for sole legal custody was not properly before the trial court.

[9] At the conclusion of testimony, the trial court asked each party whether they had been diagnosed with a mental illness and whether either of them was taking medication for such illnesses. *Id.* at 72, 78-79. Neither party had raised these issues during the hearing. Mother responded that she had no such diagnosis and that she was not taking medication. *Id.* at 72. Father admitted that, in 2014 or 2015, he had been diagnosed with ADD and prescribed Adderall and Vyvanse. *Id.* at 78-79. He stated that he went off the medication in 2017, but he told the trial court that he wanted to see a doctor about getting back on the medication because he was having trouble performing his job when he was not taking medication. *Id.* at 79.

[10] After a brief recess, the trial court awarded sole legal custody of Child to Mother, citing, among others, the following factors: 1) joint legal custody was no longer appropriate; 2) Father had pending criminal charges, one for Level 6

felony stalking; 3) Father's untreated ADD, which, Father admitted, made it difficult to perform his job; and 4) Father's grief from the loss of his mother. *Id*. at 81-82, 84. As to Mother, the trial court found that she had a stable home and a stable relationship with her husband. *Id*. at 82. On June 5, 2019, the written order was issued and recited the same reasons as the ruling from the bench but also mentioned Father's housing situation as a reason to award sole legal custody to Mother. *Appellant's App. Vol. 2* at 16.

On June 28, 2019, Father filed a motion to correct error. *Id*. at 14, 20. On July 24, 2019, the motion to correct error was denied. Father now appeals.

## Discussion and Decision

We first observe that Mother has not filed an appellee's brief, and, as a result, we have no duty to make arguments on her behalf. *See Ind. Dep't of Envtl. Mgmt. v. Constr. Mgmt. Assocs., L.L.C.*, 890 N.E.2d 107, 111 (Ind. Ct. App. 2008). Thus, if Father's brief demonstrates prima facie error, we will reverse the trial court's judgment. *See id*. Prima facie error is error "at first sight, on first appearance, or on the face of it." *Id*. If Father fails to meet this burden, we will affirm the trial court. *See id*.

A party seeking modification of custody bears the burden of demonstrating that the existing arrangement is no longer in the best interests of the child and that there has been a substantial change in one or more of the enumerated statutory factors. *Bailey v. Bailey*, 7 N.E.3d 340, 343 (Ind. Ct. App. 2014). We review a custody ruling for an abuse of discretion. *In re Paternity of Seifert*, 605 N.E.2d

1202, 1205 (Ind. Ct. App. 1993), *trans. denied*.  We neither reweigh the evidence nor judge the credibility of the witnesses.  *Id.*  We determine only whether the record reveals evidence or reasonable inferences that serve as a rational basis for the trial court's ruling.  *Id.*

# I. Due Process

[14]   Father argues that the trial court's ruling violated his right to due process in two ways.  First, he claims that in her Petition to Modify Custody, Mother did not ask for sole legal custody of Child.  Thus, Father argues, by awarding sole legal custody to Mother, the trial court injected an issue into the proceedings that Father was not prepared to litigate.  Second, Father claims the trial court interposed another issue into the proceedings that Father was not prepared to litigate when the trial court, sua sponte, asked Father if he had been diagnosed with a mental illness.

[15]   In support of his first due process argument, Father cites *Bailey,* 7 N.E.3d at 344, where we held:

> Longstanding Indiana law has prohibited trial courts from sua sponte ordering a change of custody.  Rather, when such an important issue as the custody of children is involved, a modification generally can be ordered only after a party has filed a petition requesting such a modification . . . .  An opportunity to be heard is essential before a parent can be deprived of custody.

*Id*. (internal citations omitted).

[16]    However, while Father's recitation of the law is accurate – as far as it goes - we cannot confirm his allegation that Mother did not request sole legal custody of Child because Father has failed to include a copy of Mother's Petition to Modify Custody in his Appendix. "In civil cases, an Appendix 'shall contain ... pleadings and other documents from the Clerk's Record . . . that are necessary for resolution of the issues raised on appeal.'" *In re Marriage of Gertiser*, 45 N.E.3d 363, 366 n.2 (Ind. 2015) (quoting Ind. Appellate Rule 50(A)(2)(f)). "Appellants who fail to include the materials necessary for our review risk waiver of the affected issues or dismissal of the appeal." *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 999 n.1 (Ind. Ct. App. 2015). Thus, we find that Father has waived the issue of whether Mother's Petition to Modify Custody properly placed the issue of sole legal custody before the trial court.

[17]    Furthermore, we find Father's due process argument unavailing. Even if Mother's Petition to Modify Custody did not raise the issue of sole legal custody, Father consented to litigation of that issue. Issues raised by pleadings "can be altered by the evidence adduced at trial where the parties have impliedly or expressly consented to new issues being tried." *Bailey*, 7 N.E.3d at 344. Here, Father did not object during Mother's testimony where she explicitly stated that she wanted sole legal custody of Child. *Tr. Vol. 2* at 20. Later, during Father's testimony, Father's attorney observed that "[Mother] wants to change legal custody to herself . . . ." *Id.* at 56. Father's lawyer asked Father, "Is there anything else that you think the judge needs to know about

[that]?" *Id.* Father did not respond that Mother's Petition to Modify Custody had not requested sole legal custody, but he instead gave reasons why Mother should not be granted sole legal custody. *Id*. at 57. Moreover, at no point did Father's attorney argue that Mother's request for sole legal custody was not properly before the trial court. Thus, Father consented to litigation of the issue of whether Mother should have sole legal custody of Child. Father's right to due process was not violated.

[18] Father's second due process argument is also unavailing. He claims the trial court violated his right to due process by raising the issue of Father's mental health because, in doing so, the trial court inserted an unexpected issue into the proceedings, which Father was not prepared to address. Father correctly observes that neither he nor Mother presented evidence at the hearing related to mental health. However, Father's counsel did not object to the trial court's questions about Father's mental health, so the issue is waived. *See Tesfamariam v. Woldenhaimanot*, 956 N.E.2d 118, 122 (Ind. Ct. App. 2011). Waiver notwithstanding, Father should have anticipated this line of inquiry because Indiana Code section 31-17-2-8(6) *requires* a trial court to consider mental health of all persons involved in a custody matter: "The court *shall* consider all relevant factors, including the following: . . . *The mental* and physical *health* of all individuals involved." *Id.* (emphasis added). We also observe that after eliciting testimony about Father's mental health, the trial court invited Father to pursue additional questioning, asking him, "[do] the [c]ourt's questions bring any questions that you want to follow-up on?" *Tr. Vol. 2* at 79. Father's

counsel raised no issues regarding the trial court's questions. Thus, by raising the issue of Father's mental health sua sponte, the trial court did not violate Father's right to due process.

## II. Sufficiency of Evidence

[19] Father contends the evidence was insufficient to establish that: 1) he has untreated ADD; 2) his housing situation is unstable; and 3) he is experiencing more than ordinary grief from his mother's death. Thus, he contends the evidence did not support the trial court's decision to grant sole legal custody of Child to Mother. Even assuming Father is correct that the findings about his grief and his housing situation do not support the judgment, we find that the trial court's decision to award sole legal custody of Child to Mother was supported by other facts.

[20] Indiana Code section 31-14-13-6 provides that a trial court may not modify a custody order in a paternity action unless (1) modification is in the child's best interests, and 2) there is a substantial change in one or more of the factors that the trial court may consider under Indiana Code section 31-14-13-2. The factors in Indiana Code section 31-14-13-2 include the child's relationship with the child's parents, the mental and physical health of all individuals involved, and evidence of a pattern of domestic or family violence by either parent. *Id.*

[21] Here, the trial court cited the following as substantial changes in circumstances to justify awarding sole legal custody of Child to Mother: 1) Father's untreated ADD, which, Father admitted, made it difficult for him to perform his job; and

2) Father's pending criminal charges, one of which was for Level 6 felony stalking. *Tr. Vol. 2* at 82. First, the evidence supported the trial court's finding that Father suffered from a mental illness and that the mental illness made it difficult for Father to perform his job. Moreover, the trial court did not abuse its discretion in citing both factors as substantial changes in circumstances that justified a change of custody. Our Supreme Court has held that mental illness may constitute a substantial change in circumstances that justifies modification of custody. *See Owen v. Owen*, 563 N.E.2d 605, 608 (Ind. 1990) (former wife's deteriorating mental condition provided substantial evidence of change in circumstances justifying change of custody to former husband). Likewise, pending criminal charges can constitute a substantial change in circumstances that justifies a change of custody. *Cf. Walker v. Kelley*, 819 N.E.2d 832, 838-39 (Ind. Ct. App. 2004) (where default judgment was entered for Father on his motion for change of custody, Father's pending criminal charges provided a meritorious defense to Mother on her motion to set aside the default judgment).

[22]     These changed circumstances also supported the trial court's determination that awarding sole legal custody to Mother was in Child's best interests. Moreover, other evidence also demonstrated that modifying custody was in Child's best interest. Father would spank Child with a belt, using enough force to leave bruises and welts on Child's buttocks, which worried Mother to the point that she believed Child needed to be protected from Father. *Tr. Vol. 2* at 17, 21-22, 38-39. By obtaining sole legal custody of Child, Mother alone will decide what kind of discipline is appropriate, which supports the trial court's conclusion that

it was in Child's best interest for Mother to have sole legal custody. *Cf. Collyear-Bell v. Bell*, 105 N.E.3d 176, 184-85 (Ind. Ct. App. 2018) (in divorce case, trial court did not abuse its discretion in modifying physical custody of child in favor of the ex-husband based on evidence of ex-wife's violence directed toward the child; ex-wife had repeatedly beat child with a belt or a switch, and the most recent whipping resulted in injuries to child). Accordingly, Father has failed to show that the trial court abused its discretion in awarding sole legal custody of Child to Mother, and thus, he has failed to demonstrate prima facie error.

[23] Affirmed.

Bailey, J., and Mathias, J., concur.

.