ATTORNEY FOR APPELLEE
Judy M. Tyrrell
Indianapolis, Indiana

ATTORNEY FOR APPELLANT
Russell T. Clarke, Jr.
Emswiller, Williams, Noland & Clarke, P.C.
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court



_____

No. 29S02-1511-DR-643

IN RE THE MARRIAGE OF ANNE T. GERTISER AND KEVIN GERTISER,

KEVIN GERTISER,

*Appellant/Petitioner,*

v.

ANNE STOKES F/K/A GERTISER,

*Appellee/Respondent.*


_____

Appeal from the Hamilton Superior Court, No. 29D02-0303-DR-200
The Honorable Daniel Pfleging, Judge
_____

On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-1401-DR-43
_____

**November 10, 2015**

**Rush, Chief Justice.**

A trial court may modify or revoke a spousal maintenance award under Indiana Code section 31-15-7-3(1) if it determines that there have been "changed circumstances so substantial and continuing as to make the terms unreasonable." In making that determination, the trial court has broad discretion in weighing evidence of the parties' financial circumstances. Here, the trial court concluded that the disabled former wife's remarriage had changed her finances, but not substantially enough to warrant revoking maintenance. The Court of Appeals reversed, concluding that the trial court had disregarded undisputed evidence that her total marital assets had substantially increased.

We disagree. Even though the change in the former wife's finances could appear substantial at first blush, the evidence in the light favorable to the judgment supports the trial court's findings, and those findings support its refusal to revoke maintenance. And because we affirm the trial court as to maintenance, we also affirm its award of attorney fees in the former wife's favor.

**Facts and Procedural History**

After twenty-five years of marriage, Kevin Gertiser and Anne[1] Gertiser (now Stokes) divorced in 2007. They have both remarried.

At the time of their divorce, the court ordered Kevin to pay Anne incapacity maintenance of $1,182.50 per month, finding that her legal blindness materially affected her ability to support herself:

> [Anne] suffers from severe myopia, optic nerve degeneration and macular degeneration. While the myopia is a long-standing (although progressively worsening) condition, she was first diagnosed with optic nerve degeneration and macular degeneration beginning approximately 1998. In 1998, [Anne] experienced a retinal tear. Since then her eyesight has degenerated to the point at which she is effectively blind. She is able to do some reading, with material held an inch or two from her face. She moves about with the assistance of a lead dog, Dina. She is unable to drive and relies on the assistance of friends, and the bus, for transportation. [Anne] is incapacitated to the extent that her ability to support herself is materially affected.

Anne's income at the time was under $10,000 per year in Social Security Disability benefits and under $1,000 of annual earnings from part-time medical transcription work from home, while Kevin made about $144,000 per year. The maintenance award was affirmed on appeal. Gertiser v. Gertiser ("Gertiser I"), No. 29A02-0712-CV-1069 (Ind. Ct. App. Aug. 21, 2008), trans. denied.

About a month after Anne remarried, the CCS shows that Kevin filed a "Motion to Modify Spousal Maintenance."[2] At the hearing on that motion, Kevin argued that maintenance should be

---

[1] Neither party's briefing spells Anne's name consistently, but we use the predominant spelling.

[2] We know nothing about the contents of that motion, because it was not included in the Appendix. In civil cases, an Appendix "shall contain . . . pleadings and other documents from the Clerk's Record . . . that are necessary for resolution of the issues raised on appeal." Ind. Appellate Rule 50(A)(2)(f). An Appendix should include *only* the necessary parts of the record on appeal, see App. R. 50(A)(1)—but because the Clerk's Record is not routinely transmitted on appeal, see App. R. 12(A), we also depend on the parties not to *exclude* necessary material, either.

revoked entirely—alleging that Anne's remarriage created a substantial and continuing change in her financial condition that made any further maintenance unreasonable, because Anne's husband Paul brought substantial assets and income into the marriage and has a statutory duty to support her. He also argued that Anne was capable of working in medical transcription or phone-based customer service "with updated skills and re-training" and assistive technology.

After a hearing, the trial court issued findings of fact and conclusions of law—determining that there had been no "substantial and continuing change in circumstances making the award of spousal maintenance unreasonable" and that Anne's "ability to support herself" remains "materially affected." It reasoned that its original maintenance award did not depend on Anne being "totally incapable of working," and that neither her disability nor earning potential had improved since then. It also found that Kevin's income had increased since the divorce while Anne's "minimal" income was unchanged, and that despite her remarriage, the "only significant change to her financial situation . . . is that she no longer has to borrow money from her father each month to pay her mortgage." The court acknowledged Paul's "statutory duty to support his wife," but also that under Indiana law, a disabled spouse's "[r]emarriage . . . alone is not sufficient to establish a substantial change of circumstances" to warrant modification. It therefore denied Kevin's petition and ordered him to pay $7,000 of Anne's attorney fees.

Kevin appealed, and the Court of Appeals reversed. In re Marriage of Gertiser ("Gertiser II"), 24 N.E.3d 521 (Ind. Ct. App. 2015), trans. granted, vacated. The Court of Appeals agreed with Anne that "spousal maintenance is not automatically terminated upon her remarriage," id. at 523–24 (citing Roberts v. Roberts, 644 N.E.2d 173 (Ind. Ct. App. 1994)), but under these circumstances agreed with Kevin that Anne's "marriage to a man of significant means amounts to a substantial change in her ability to support herself." Id. at 524. It therefore concluded:

> Although the trial court is correct that Anne's ability to earn income has not changed, the court abused its discretion by denying Kevin's petition to terminate spousal maintenance because it did not consider

Nevertheless, Kevin's briefing characterizes the motion as "a petition to *terminate* spousal maintenance," Appellant's Br. at 1 (emphasis added), and he reiterated at the hearing that he sought exclusively to revoke the maintenance award, and not merely reduce or modify it. Tr. 7:4–5, 121:20–24. Since Anne does not dispute that characterization, we accept it as accurate. Still, when the ruling on a written motion is appealed, a copy of the motion is necessary to resolving the appeal and should therefore be included in the Appendix.

> the substantial income and assets now available to Anne pursuant to her marriage to Paul. Accordingly, the trial court should have terminated the spousal maintenance.

Id. at 524. It further ordered the termination to be retroactive to the date Kevin filed his petition. Id. at 525. Finally, it reversed the attorney-fee award in Anne's favor because "[a]s noted above, when including all resources available to Anne, no . . . disparity exists [between her financial resources and Kevin's]. Rather, Anne has more resources available to pay attorney fees than does Kevin." Id. at 525.

We held oral argument on Anne's petition to transfer and now grant transfer by separate order issued together with this opinion. We recognize this record could have supported Kevin's position, if the trial court had accepted it. But there is also ample evidence to support the contrary view reflected in the trial court's findings—and those findings support the refusal to revoke maintenance. We therefore affirm.

**Discussion**

## I. Indiana Courts May Revoke Incapacity Maintenance for Recipients Whose Ability to Support Themselves Is No Longer Materially Affected—Even if They Are Still Disabled.

We begin with the threshold question Anne presents on transfer: Whether a court may revoke incapacity maintenance for recipients who remain incapacitated, but have a substantial and continuing change in their financial circumstances. She argues that unless a recipient is no longer disabled, a change in circumstances warrants only *modifying* maintenance, while permanently *revoking* it is warranted only for recipients who are no longer incapacitated to the extent that their ability to support themselves is materially affected. We disagree, because even though revoking maintenance for a still-disabled spouse is an extreme remedy that should be exercised with great caution, it is nevertheless authorized by statute.

Spousal maintenance awards in Indiana are "restricted to three, quite limited options." Voigt v. Voigt, 670 N.E.2d 1271, 1276 (Ind. 1996). At issue here is incapacity maintenance, which requires both a physical or mental *incapacity* and a resulting financial *necessity*:

> If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that

4

maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

Ind. Code § 31-15-7-2(1) (2008).[3] After the initial award,

[p]rovisions of an order with respect to maintenance ordered under . . . this chapter (or IC 31-1-11.5-9(c) before its repeal) may be modified or revoked. Except as provided in IC 31-16-8-2, modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable[.]

I.C. § 31-15-7-3(1).[4] In Haville v. Haville, we accepted that statutory language at face value—observing in a footnote that the statute "expressly declares that provisions of an order for maintenance authorized by statute 'may be modified or revoked' upon specified grounds, one of which is 'a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.'" 825 N.E.2d 375, 378 n.2 (Ind. 2005).[5] Nothing in that statutory language limits the "circumstances" to the incapacity itself. To the contrary, it permits revocation under precisely the same terms as modification—when the award has become unreasonable under the circumstances.

As a practical matter, though, that standard is more daunting for revoking maintenance than merely modifying it—especially when, as here, the underlying incapacity is permanent. The party seeking modification bears the burden of proving that the asserted change of conditions is so substantial and continuing that the existing maintenance award is unreasonable. Myers v. Myers, 560

---

[3] The statute also authorizes "caregiver maintenance" when the recipient spouse must forego employment to care for an incapacitated child, see I.C. § 31-15-7-2(2); and "rehabilitative maintenance" for up to three years when the spouse needs support while obtaining job-related education or training, see I.C. § 31-15-7-2(3). Voigt, 670 N.E.2d at 1276–77.

[4] The reference to Indiana Code section 31-16-8-2 (which applies based on parents' ability to obtain health insurance for children), and a later reference to modification when "a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines," I.C. § 31-15-7-3(2)(A), appear to be editorial oversights from incorporating verbatim similar provisions of the child-support modification statute. See I.C. § 31-16-8-1(b).

[5] The first sentence of the statute confers authority for an order to be either "modified or revoked." Yet the second sentence, detailing the grounds for such an order, expressly mentions only "modification" without a comparable provision establishing separate grounds for "revocation." But in that context, *revoking* an award is a form of *modifying* it, so the two terms are not necessarily exclusive. We therefore conclude that if the General Assembly intended to make revocation available on different grounds than modification, it would have articulated those different grounds, rather than leaving the statute conspicuously silent on such a critical point. We affirm what our footnote in Haville already intuited—that the grounds specified in Indiana Code section 31-15-7-3 apply to either modifying or revoking a maintenance award.

N.E.2d 39, 43 (Ind. 1990). For a modification, it is enough to show changes are "substantial and continuing" enough to make the existing award unreasonably excessive or inadequate, and the opportunity remains open for future modifications. But because revoking an award means extinguishing it forever, it necessarily entails proving that the change is so "substantial and continuing" that the very *existence* of the award has become unreasonable—not only in the present, but under any reasonably foreseeable future circumstances as well.

In some cases, that showing may be relatively straightforward. For instance, if the recipient spouse has recovered from the condition on which the award was based, there is no longer an *incapacity* at all to support maintenance. Or the payor might prove (as Kevin attempted to do in the trial court) that because of improved employment prospects, the incapacity is no longer a material impediment to the recipient's "ability . . . to support himself or herself," I.C. § 31-15-7-2(1)—so that despite ongoing *incapacity*, there is no longer a *necessity*.

Here, though, Anne's vision loss is undisputedly permanent—and Kevin does not challenge the trial court's finding that her employability likewise has not improved. Accordingly, Kevin's petition to revoke must depend on proving that Anne's remarriage has not just improved her finances, but improved them so substantially as to foreclose any reasonable need for additional support in the future. We therefore begin with the trial court's findings about the parties' finances, and then consider whether, in view of those findings, Kevin carried his burden of proving that maintenance should be revoked.

## II. The Evidence Supports the Trial Court's Findings About the Parties' Finances.

Here, Kevin argues—and the Court of Appeals agreed—that the trial court impermissibly "disregard[ed]" evidence, Myers, 560 N.E.2d at 42 (citation omitted), by finding that Anne's financial circumstances have not significantly changed, when it is undisputed that she and Paul have over $600,000 in marital assets and Paul's base pay is higher than Kevin's. But because the trial court's findings can be reconciled with those undisputed facts, Kevin's argument amounts to a request to reweigh the evidence in violation of the standard of review.

### A. *We review the trial court's findings of fact deferentially, but we review conclusions of law de novo.*

Trial courts have broad discretion in ruling on petitions to modify maintenance, and we will reverse their decisions only for abuse of discretion. That is, we review whether the decision

6

"is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom"; whether the court misinterpreted the law or disregarded evidence of factors listed in a controlling statute, id. (citations omitted); or whether it applied the wrong legal standard to properly found facts, K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 457 (Ind. 2009).

Upon Kevin's timely request, the trial court entered findings of fact and conclusions of law. We therefore "shall not set aside the findings or judgment unless clearly erroneous" and shall give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011) (quoting Ind. Trial Rule 52(A)). Rather, we look only to whether the evidence supports the findings, and then whether the findings support the judgment, In re Adoption of T.L., 4 N.E.3d 658, 662 (Ind. 2014) (citations omitted), without reweighing the evidence or reassessing witness credibility, Best, 941 N.E.2d at 502 (citations omitted). The findings are controlling unless the record contains "no facts to support them either directly or by inference." Id. (quoting Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997)). Legal conclusions, though, are reviewed de novo. Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002).

*B. The trial court's findings about the parties' finances are supported by the evidence.*

Kevin argues that the court failed to consider substantial income and assets that became available to Anne when she married Paul. Gertiser II, 24 N.E.3d at 524. In his view, the undisputed evidence that Paul and Anne have over $600,000 in total marital assets, and that his base pay is modestly lower than Paul's, should have compelled the trial court to find that it had become unreasonable to pay any maintenance at all. But as discussed above, our role is not to reweigh the evidence or substitute our judgment for the trial court's, Best, 941 N.E.2d at 502, but only to determine whether the evidence supports the findings and whether those findings support the judgment, T.L., 4 N.E.3d at 662.

Here, the trial court made no detailed calculations about either party's finances. Instead, it found in general terms that both Anne's and Kevin's finances had changed and concluded that those changes did not warrant modification:

> 10. [Anne] still does not have a regular job and she still collects [S]ocial [S]ecurity [D]isability pay.
>
> . . .

7

16. Based upon the evidence presented, the court finds that [Anne] is still incapacitated such that the ability to support herself is materially affected and that [Kevin] has not shown that a substantial and continuing change of circumstances making the award of spousal maintenance unreasonable exists.

17. Both parties have remarried since the divorce, and both of their spouses work. Both new spouses contribute to the household expenses, thereby somewhat alleviating each party's financial burden.

18. [Kevin]'s income has increased since the date of divorce.

19. Except for the minimal amount she has received from [the occasional work for her friend's business], [Anne]'s income consists solely of her [S]ocial [S]ecurity [D]isability and spousal maintenance.

20. The only significant change to [Anne's] financial situation since her marriage is that she no longer has to borrow money from her father each month to pay her mortgage.

21. [Anne] is still unemployed and she still lives in the house she was awarded at the time of [the] divorce. [Kevin] earned $181,094.57 in 2012 and has recently purchased a new $300,000.00 home.

. . .

25. Although [Anne]'s financial circumstances have improved since her remarriage, it was not shown that they have improved significantly more than [Kevin]'s have improved, [n]or that they have improved to such an extent that the maintenance award should be modified.

App. 13, 15–16.

Kevin does not directly challenge those findings on appeal. Instead, he argues that they ignore the undisputed evidence regarding Paul and Anne's combined marital assets and Paul's higher income. Kevin argues that those particular facts establish a substantial and continuing change, making maintenance unreasonable. But even though those facts are undisputed so far as they go, they paint a decidedly incomplete picture. A deferential view of all the evidence suggests legitimate reasons why the trial court was not persuaded by the facts Kevin emphasizes.

First, Anne's vision is unimproved, and if anything, continues to deteriorate. Kevin's vocational rehabilitation expert witness testified that Anne could continue in the medical transcription field (as she did from home with Kevin's help from 1999 to 2005), or work in phone-based customer service positions, "with updated skills and re-training" and assistive technology. But the expert also

acknowledged that Anne had the same skills and the same adaptive technology existed when the court found her incapacitated in 2007; and that "transportation would be an issue if she worked outside the home." And both Anne and her expert witness believed that despite her strong credentials, Anne's blindness would prevent the pace or sustainability of her work from being competitive in the job market. The trial court was within its discretion to find no change in Anne's employability.

As to the financial issues, we observe that the first $253,000 of Anne's marital assets do not constitute any "change" in her financial circumstances. To the contrary, that was the value of the 60% share of the former marital assets awarded to her in the divorce—the former marital home with about $62,500 of equity and the rest in various investment accounts. The fact that Anne still had those assets after she married Paul is therefore no "change" at all, let alone a "substantial and continuing" one that would warrant modification under Indiana Code section 31-15-7-3. Moreover, Anne testified that the investment accounts carry substantial penalties for early withdrawal, which further reduces their present-day liquid value as a potential means for her to support herself—an additional reason that Anne's possession of those accounts does not necessarily establish any change in her finances (at least, perhaps, until she can reach those funds without penalty).

The record further reveals a reasonable basis to discount the practical value of the remaining $371,000 of assets Paul brought into his marriage to Anne. Of that amount, $170,000 is the value of his 50% legal interest in a trust[6] that holds title to his parents' home. But as he testified, his parents still use that home, pay the taxes on it, and otherwise appear to hold the entire equitable interest in the property. Much like a vested remainder interest, then, Paul's interest in the trust likely could not realistically be marketed or even leveraged as collateral for borrowing—thus lacking "substantial" practical present value to constitute a change in Anne's financial circumstances, and providing a reasonable basis for its exclusion from the findings.

Even those reasonable adjustments leave $201,000 of "new" marital assets potentially available to Anne—hardly a trivial sum. But again, nearly all of that sum is held in 401(k) or IRA accounts for which withdrawals would incur substantial penalties, permitting the trial court to discount the extent to which those assets presently "change" Anne's finances—especially when even in retirement, those sums will need to support two people, not just one.

---

[6] Paul called the trust a "GRIT," which we assume means a grantor-retained income trust.

Finally, Kevin emphasizes that Paul's income is greater than his own. But as the trial court found, Kevin's own income—and with his remarriage, his total household income—has also increased. And while Paul earns $163,800 per year, not all of it is actually available for supporting Anne. Paul pays $1,300 per month as maintenance to his former wife, which in both absolute terms and as a percentage of his income exceeds Kevin's $1,182 obligation to Anne. And Paul also pays nearly the same amount—$1,265.33 monthly—in child support, in addition to college tuition and other expenses for his children from that marriage. Accordingly, he testified that without Anne's maintenance, his individual earnings would be inadequate for the couple's combined expenses. There again, the evidence might have *permitted*, but did not *compel*, the trial court to ascribe the same weight to the parties' incomes as Kevin advocated. Accordingly, the trial court did not impermissibly "disregard" that evidence, Myers, 560 N.E.2d at 42, and we decline Kevin's invitation to reweigh the evidence.

C. *Under the facts as found by the trial court, the change in Anne's finances was not so substantial and continuing as to make it unreasonable to leave the maintenance order in effect.*

Having found that the evidence supports the trial court's findings of fact, we must consider whether those findings support its judgment, T.L., 4 N.E.3d at 662—that is, whether there was such a substantial and continuing change in Anne's financial circumstances that the very existence of the prior maintenance order had become unreasonable. That determination "is, at minimum, a mixed question of law and fact." See MacLafferty v. MacLafferty, 829 N.E.2d 938, 941 (Ind. 2005) (so holding as to identical child-support modification standard). To the extent that mixed question is factual (for example, regarding the trial court's determination of the parties' respective incomes, id.), we treat the findings as controlling, see Best, 941 N.E.2d at 502. But whether the findings establish a substantial and continuing change in circumstances is a question of law, which we therefore consider de novo. MacLafferty, 829 N.E.2d at 941.

We conclude that, in view of its findings, the trial court correctly refused to revoke maintenance. As discussed above, proving that a change in circumstances is so "substantial and continuing" as to require *revoking* maintenance is a steep showing. But at the hearing, that was the only relief Kevin sought, expressly disclaiming any alternative request for merely *reducing* the award. In fact, his counsel characterized his motion as seeking "termination of spousal maintenance." Tr. 7:4–5. And even after Anne's counsel had conceded in opening that "the Court would have discretion to

10

modify without terminating the spousal maintenance," Tr. 8:6–7,[7] Kevin remained adamant that he wanted only revocation, not just modification:

> Q    Okay, now you're asking the Court to modify, or actually, you are not asking the Court to modify the maintenance, you want the Court to just eliminate it, right?
>
> A    That's correct.

Tr. 121:20–24. Again, revoking maintenance required Kevin to prove not merely that the maintenance award had become unreasonably *excessive*, but its very *existence* had become unreasonable. And under the facts as found by the trial court, any change in Anne's finances was not of a magnitude that made it unreasonable to leave a maintenance order in place. Since Kevin made no alternative argument for a reduction, we need not consider (and express no opinion about) whether a modification might have been warranted. In this procedural posture, where Kevin chose to seek all-or-nothing relief, we agree that these findings support denying the drastic remedy he requested.

### III. Affirming the Trial Court's Maintenance Decision Also Leads Us to Affirm Its Attorney-Fee Award in Anne's Favor.

In addition to reversing the trial court on the maintenance modification, the Court of Appeals also reversed the award of attorney fees in Anne's favor. The court acknowledged that trial courts have "wide discretion in awarding attorney fees" so that reversal is warranted "only if the award is clearly against the logic and effect of the facts and circumstances before the court." Gertiser II, 24 N.E.3d at 525 (citing Mason v. Mason, 775 N.E.2d 706, 711 (Ind. Ct. App. 2002), trans. denied.). Here, the trial court awarded fees "because of the wide disparity in the part[ies'] incomes." Id.

But because Anne had not responded on appeal to Kevin's attorney fee challenge, the court reviewed only for prima facie error. Id. at 524 (quoting Tisdial v. Young, 925 N.E.2d 783, 784–85 (Ind. Ct. App. 2010)). In turn, it reasoned that determining that the trial court had misjudged the parties' finances as to maintenance also negated the basis for the fee award, since the Court of Appeals saw no real financial disparity between Anne and Kevin. See generally id. at 524–25.

The flip side of that reasoning leads us to affirm the attorney-fee award—that affirming the trial court's findings about the parties' finances also entails affirming its finding that there was

---

[7] Despite conceding the court's discretion, she argued that modification would be inappropriate. Tr. 8:4–5.

enough disparity between Anne's and Kevin's resources to justify the award. We again decline to reweigh that decision, and therefore affirm the trial court.

## Conclusion

Even though the trial court would have had authority under Indiana Code section 31-15-7-3 to revoke maintenance, the evidence supports its findings, and its findings support its judgment that Anne's finances had not changed so substantially that revocation was warranted. Because we affirm the trial court as to maintenance, we likewise affirm its award of attorney fees.

Dickson, Rucker, David, and Massa, JJ., concur.