

**FILED**

Jun 14 2016, 8:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

<table>
<tr><td>

**ATTORNEY FOR APPELLANT**

Christopher A. Buckkey
Valparaiso, Indiana

</td><td>

**ATTORNEY FOR APPELLEE**

Joseph S. Irak
Merrillville, Indiana

</td></tr>
</table>

# IN THE
# COURT OF APPEALS OF INDIANA

<table>
<tr><td>

Gregory Schafer,

*Appellant-Defendant,*

v.

Kathryne Borchert d/b/a
Southlake Realty,

*Appellee-Plaintiff.*

</td><td>

June 14, 2016

Court of Appeals Case No.
56A04-1507-CP-977

Appeal from the Newton Circuit
Court

The Honorable Jeryl F. Leach,
Judge

Trial Court Cause No.
56C01-9108-CP-114

</td></tr>
</table>

**Altice, Judge.**

## Case Summary

[1] In 1988, Kathryne Borchert d/b/a Southlake Realty (Borchert) purchased three undeveloped real estate lots at a tax sale. She filed the instant action in 1991 to quiet title to the real estate based on the tax sale and the subsequently issued tax deeds. Gregory Schafer answered and filed a counterclaim, in which he sought to set aside the tax deeds. After two unsuccessful motions for summary

judgment, one filed by each party in 1992, and a failed mediation in 1994, the case stagnated for over twenty years with Borchert continuing to pay real estate taxes on the subject properties. Following a brief bench trial on June 24, 2015, the trial court entered judgment in favor of Borchert, awarding her fee simple ownership of the properties. In relevant part, the trial court found that although the notice of tax sale was sent one day late, the notice substantially complied with the statutory requirements. On appeal, Schafer argues that the trial court improperly relied upon the substantial compliance doctrine.

[2] We affirm.

## Facts & Procedural History

[3] In 1983, Schafer[1] purchased a large parcel of farmland in Crown Point, Indiana for the purpose of subdividing and developing it into improved industrial real estate. After having the property rezoned, Schafer subdivided it into seven separate and distinct parcels and proceeded to develop and sell Lots 1, 2, 3, and 5 in 1984. Schafer kept two semi-truck trailers on the undeveloped lots, in which he stored building supplies for construction projects onsite and elsewhere. The trailers were last licensed in 1983. Development on Lots 4, 6, and 7 (the Real Estate) never came to fruition. Schafer last paid real estate

---

[1] Schafer purchased the property jointly with William Modrak, a silent partner.

taxes on the Real Estate in 1984. Accordingly, a property tax deficiency on the Real Estate began to accrue.

[4] On September 12, 1988, the Lake County Auditor's Office sent out notice of a tax sale regarding the Real Estate to Schafer at 5689 Pierce Street in Merrillville, Indiana. This was the address Schafer had on file with the auditor's office. Notices were also published in a newspaper. The tax sale was then conducted on October 3, 1988, and Borchert purchased the Real Estate for a total of $541.00.

[5] After the tax sale, the notice previously sent to Schafer was returned to sender because he no longer lived at that residence. He had moved from Lake County to Porter County in 1986. Schafer did not change his address with the auditor's office after his move. Subsequent notices relating to the tax sale and redemption period were similarly returned to the auditor's office as undeliverable.

[6] The tax deeds were issued to Borchert on October 12, 1989, and she recorded the deeds on November 1, 1989. She eventually began the process of cleaning up the Real Estate, which contained abandoned semi-truck trailers, old tires, and weeds. In 1991, Borchert hired a wrecking service to remove the old tires. At some point, she made unsuccessful efforts to locate the owner of the dilapidated trailers, including contacting the Crown Point Police, and then had the trailers removed. Although Borchert never developed the Real Estate, she and her family maintained the lots and stored an RV and boat there.

[7] In February 1991, Schafer went to the Lake County Auditor's Office on other business and while there, inquired as to the Real Estate. He was informed that the Real Estate had been sold in a tax sale in October 1988 and that a tax deed had been issued to Borchert the following year. Thereafter, on February 20, 1991, Schafer attempted to convey the Real Estate by warranty deeds to Timothy S. Schafer and Francis J. Schafer, both attorneys. Timothy and Francis recorded the deeds five days later but title did not transfer because Borchert owned the Real Estate. This, however, clouded Borchert's title in the Real Estate.

[8] Borchert filed this action in the Lake Circuit Court on May 28, 1991, to quiet title to the Real Estate. Schafer answered the complaint and filed a counterclaim[2], seeking to set aside the tax deeds and quiet title in his favor. Schafer alleged in part that the required notices "were not in substantial compliance with the manner prescribed" by their respective statutes. *Appendix* at 406. Schafer also filed a motion for change of venue, which was granted, and the case was transferred to Newton County Circuit Court in August 1991.

[9] On August 21, 1992, Borchert filed a motion for summary judgment in which she argued that the tax sale certificates and deeds constituted prima facie evidence of the regularity and validity of the tax sale. Schafer responded in

---

[2] Francis, Timothy, and Modrak were also original party defendants/counter-claimants, but Schafer is the only remaining party because the other defendants "waived their interests to Mr. Schafer" at some point during the proceedings. *Transcript* at 1.

opposition that he never received actual notice of the sale and that the notices issued were not in substantial compliance with statutory requirements. Following a hearing, the trial court denied the motion for summary judgment on October 19, 1992. Borchert began steps to initiate an interlocutory appeal of the order, and a hearing was set to consider her petition for certification.

[10] On December 8, 1992, Schafer filed a response to the petition and a cross-motion for summary judgment. With respect to the summary judgment motion, he argued in relevant part that Ind. Code § 6-1.1-24-4 required that notice of the tax sale be given to the owners at least twenty-one days before the day of the sale and that notice in this case was mailed one day late. Following a hearing and Borchert's withdrawal of her petition for certification, Schafer's motion for summary judgment was denied by the trial court on December 30, 1992. The parties subsequently requested that the trial court make specific findings with respect to its denials of summary judgment. On April 23, 1993, the court entered the following findings:

> (1). That notice of the sale of the property was issued twenty (20) days prior to the actual date of sale.
>
> (2). That a material issue of fact exists as to when the Plaintiff – Counter Defendant took possession of the property.

*Appendix* at 163.

[11] On May 6, 1993, the case was continued generally. The parties entered into a court-ordered mediation in 1994 that failed. Over the next twenty plus years, a

series of pretrial conferences and status hearings were held and/or continued and over twenty bench trials were set and then rescheduled. During this period of stagnation, Borchert passed away in August 2007 and her son Richard Borchert took over as personal representative of her estate.

[12] A bench trial was finally conducted on June 24, 2015, at which the parties presented brief evidence. The basis of Schafer's argument was that the tax sale was void because notice of the sale was provided a day outside the statutory requirement. He asked the court to take judicial notice of the April 23, 1993 order, which the court did. At the conclusion of the evidence, the trial court took the matter under advisement and issued an order later that day in favor of Borchert, concluding that she was the fee simple owner of the Real Estate. Specifically, the trial court concluded that even though the auditor sent the notice of sale twenty days, rather than twenty-one days, before the sale, the notice provided "substantially complied with the statutory procedure for tax sale notice." *Id*. at 29. The court explained in part:

> Even if the tax sale had been held a day later and complied with the statutory time requirement, Defendant would still not have received notice and would not have been able to act to protect his property interest. The lack of actual notice in this instance is a direct result of Defendant's failure to keep his address updated with the Auditor. The notice provided in this case was reasonably calculated, under all the circumstances, to apprise Defendant of the pendency of the action and afford him an opportunity to present his objections….

*Id*. Schafer now appeals.

**Discussion & Decision**

[13] We will disturb a trial court's findings and judgment only when they are clearly erroneous. *Nichols v. Minnick*, 885 N.E.2d 1, 3 (Ind. 2008) (citing Ind. Trial Rule 52(A)). Findings of fact are clearly erroneous when they have no factual support in the record. *Id*. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id*. Schafer correctly observes that the relevant facts in this case are not in dispute, and the questions presented are legal ones. Accordingly, our review is de novo. *In re Marriage of Gertiser*, 45 N.E.3d 363, 369 (Ind. 2015).

[14] The notice statute at issue, I.C. § 6-1.1-24-4, has been amended a number of times during the pendency of this case. At the relevant time in 1988, it provided in part:

> (a)    In addition to the notice required by section 3 of this chapter, the county auditor shall send a notice of the sale by certified mail to the owner or owners of the real property at their last known address…. *The county auditor shall mail the notice at least twenty-one (21) days before the day of sale*….

(Emphasis supplied).

[15] As set forth above, the trial court found that this notice was mailed twenty days before the tax sale, in violation of the statutory requirement. The trial court, however, concluded that said notice substantially complied with the statutory notice requirement in this regard.

[16] Schafer contends that the trial court erred by applying the doctrine of substantial compliance. His primary argument is that a substantial compliance analysis is not appropriate when analyzing an issue involving the timing of notice.[3] We observe, however, that this court has applied the doctrine before in the context of an untimely notice under the tax sales statutes. *See Smith v. Breeding*, 586 N.E.2d 932, 938 (Ind. Ct. App. 1992) (statutory notice regarding the right of redemption required to be sent not less than thirty days before expiration of the period for redemption; notice mailed twenty-eight days before expiration, under the circumstances, substantially complied with statutory requirement). While Schafer attempts to distinguish *Smith*, we do not find it necessary to reach the merits of the parties' arguments regarding substantial compliance. This is because the notice provided did, in fact, comply with the twenty-one-day requirement of I.C. § 6-1.1-24-4(a).

[17] It is undisputed that the tax sale occurred on October 3, 1988, and that notice of the sale was mailed on September 12, 1988. Applying Indiana Trial Rule 6(A), the trial court found, as argued by Schafer, that the notice was mailed only twenty days before the sale. The trial court misapplied the law in this regard.

[18] Trial Rule 6(A) provides in relevant part:

---

[3] Schafer also asserts that the trial court committed reversible error when it decided the case on the basis of substantial compliance because this issue was not raised by Borchert at trial. Schafer cites no relevant authority in support of his argument that the trial court's hands were so tied. Moreover, we observe that Schafer himself raised the issue of substantial compliance below on more than one occasion. *See Appendix* at 307 and 406.

In computing any period of time prescribed or allowed by these rules, by order of the court, or by any applicable statute, *the day of the act, event, or default from which the designated period of time begins to run shall not be included.* The last day of the period so computed is to be included unless it is:

> (1) a Saturday,
>
> (2) a Sunday,
>
> (3) a legal holiday as defined by state statute, or
>
> (4) a day the office in which the act is to be done is closed during regular business hours.

In any event, the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the office is closed….

(Emphasis supplied.) To reach the conclusion that notice of the tax sale was mailed one day late, the trial court had to conclude, as asserted by Schafer, that the auditor's mailing of the notice was the act or event from which the clock began to run. But such is not the case.

[19] I.C. § 6-1.1-24-4(a) places a requirement on the auditor concerning the timing of notice, not the timing of when the tax sale must be held after notice is provided. The statute requires the auditor to mail notice of the tax sale to the property owner at least twenty-one days before the sale. Importantly, the statute does not require that the sale be held no fewer than twenty-one days after notice is mailed. This is a meaningful distinction because it indicates from which perspective the twenty-one-day period of time should be examined. *See Hilligoss v. Associated Cos., Inc.*, 589 N.E.2d 1202, 1205 (Ind. Ct. App. 1992), *trans. denied*.

The act or event for purposes of Trial Rule 6(A) in the context of I.C. § 6-1.1-24-4(a) is the date of the sale. From there, the days should be counted backwards to the date notice is mailed. *See Hilligoss*, 589 N.E.2d at 1205.

[20] The date of the tax sale was October 3, 1988. Thus, the first day to be counted toward the twenty-one-day period was October 2, 1988. The first day upon which notice could be mailed in compliance with the statute was September 12, 1988, twenty-one days before the sale. Properly applying Trial Rule 6(A) to the statute at hand establishes as a matter of law that the notice mailed on September 12, 1988, was timely. Accordingly, it was not necessary for the trial court to reach the issue of substantial compliance in order to grant judgment in favor of Borchert. As his appellate argument – as well as his argument below – hinges on an incorrect application of the law in determining the timeliness of notice, Schafer has failed to establish that Borchert was not entitled to judgment.

[21] Judgment affirmed.

[22] Bailey, J. and Bradford, J., concur