## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2018, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Donald J. Schmid
Law Offices of Donald J. Schmid
South Bend, Indiana

John D. LaDue
Paul Edgar Harold
LaDue Curran & Kuehn LLC
South Bend, Indiana

ATTORNEYS FOR APPELLEES

Jeffery A. Johnson
Daniel R. Appelget
May Oberfell Lorber
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Weidner and Company, P.C., <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Jurgonski & Fredlake CPAs, P.C., Greg Jurgonski, and John Fredlake, <br> *Appellees-Defendants.* | October 31, 2018 <br><br> Court of Appeals Case No. 18A-MI-535 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Steven L. Hostetler, Judge <br><br> Trial Court Cause No. 71D07-1603-MI-79 |

**Najam, Judge.**

# Statement of the Case

Weidner and Company, P.C. ("Weidner") filed a complaint against Jurgonski & Fredlake CPAs, P.C., Greg Jurgonski, and John Fredlake (collectively "Jurgonski and Fredlake") alleging breach of an asset purchase agreement, fraudulent inducement, and breach of employment agreements. Jurgonski and Fredlake, whose employment with Weidner had just been terminated, filed an answer and counterclaims, and they sought a declaratory judgment on the issue of whether Weidner had fired them for cause under the terms of their employment agreements. Following an evidentiary hearing on their counterclaim for declaratory judgment, the trial court concluded that Weidner had not fired Jurgonski and Fredlake for cause.

Weidner appealed the declaratory judgment. While that appeal was pending, Weidner moved to remand this case to the trial court in order to file a Trial Rule 60(B)(2) motion to set aside the declaratory judgment based on alleged newly discovered evidence. We granted that motion. On remand, following an evidentiary hearing, the trial court denied Weidner's Rule 60(B)(2) motion.

Weidner now appeals and presents the following issues for our review:

1. Whether the trial court erred when it concluded that Weidner did not terminate Jurgonski's and Fredlake's employment for cause.

2. Whether the trial court abused its discretion when it denied Weidner's motion to set aside the declaratory judgment based on alleged newly discovered evidence.

We affirm.

## Facts and Procedural History

In November 2014, Weidner, an accounting firm in Plymouth, acquired Jurgonski and Fredlake CPAs, P.C., an accounting firm in South Bend, through an asset purchase agreement, and Weidner entered into employment agreements with Jurgonski and Fredlake. The employment agreements included two-year restrictive covenants preventing Jurgonski and Fredlake from competing with Weidner if Weidner terminated their employment for cause. The employment agreements defined "for cause" as follows:

> For the purpose of this Agreement, "for cause" shall mean any of the following:
>
> (1) conviction or guilty plea to a felony;
>
> (2) disqualification by a state licensing board;
>
> (3) perpetration of an act of fraud or embezzlement or other act of dishonesty by Employee in connection with the performance of Employee's duties as an employee of the Company;
>
> (4) substance abuse or use of illegal drugs that, in the reasonable judgment of the Company, impairs Employee's performance of his duties as an employee of the Company;
>
> (5) *inaccurate work* or late work;
>
> (6) alienation of co-workers or clients of Company;
>
> (7) any other conduct [that] is injurious to or adverse to the employer-employee relationship.

> For cause is to be interpreted from a reasonableness standpoint under the circumstances and is not intended to provide the Company an arbitrary or capricious basis for termination of the Employment Agreement. *The "for cause" condition violation must be one which has a meaningful effect on the ability of the Company to serve its clients.*

Appellant's App. Vol. II at 210-11 (emphases added).

[6] In February 2016, after reviewing the accounting work performed by Jurgonski and Fredlake during the 2015 tax season, Weidner found numerous errors that Jurgonski and Fredlake had allegedly made, including:

- Fredlake took a $35,554.80 deduction for taxes on a return that the client had never paid.

- Fredlake failed to report $119,432 of income on a Michigan tax return resulting in $8,000 more in taxes for the client.

- Fredlake missed a $197,963 capital loss carryover for a client resulting in a significant increase in tax.

- Jurgonski failed to record $3.2 million in loans on a client's balance sheet or to disclose those loans in the notes of the financial report.

- Jurgonski and Fredlake had been concealing from Weidner that they were making thousands of dollars in payments to clients to settle penalties those clients had incurred due to poor accounting work.

[7] In March 2016, Jurgonski and Fredlake filed a lawsuit against Weidner contending that Weidner had defaulted on payments owed under the parties'

November 2014 asset purchase agreement. In May 2016, Weidner notified Jurgonski and Fredlake that Weidner was terminating their employment for cause. And Weidner filed its complaint against Jurgonski and Fredlake alleging breach of the asset purchase agreement, fraudulent inducement, and breach of the employment agreements. Jurgonski and Fredlake filed an answer, affirmative defenses, and counterclaims, including a counterclaim for a declaratory judgment on the issue of whether Weidner had terminated their employment for cause. The trial court consolidated the parties' separate causes of action and set Jurgonski and Fredlake's declaratory judgment counterclaim for a bench trial on September 20.

[8] The parties stipulated that whether the parties' non-compete clause would take effect depended on a determination of whether Jurgonski and Fredlake were terminated for cause. Following the bench trial, the trial court concluded that Weidner had not carried its burden to prove that it had terminated Jurgonski and Fredlake for cause. In particular, with respect to the alleged errors made by Jurgonski and Fredlake, the trial court found and concluded as follows:

> Jurgonski and Fredlake did make errors while they were employed with [Weidner]. However, [Weidner] (as the party with the burden of proof) introduced no evidence that the errors were beyond what is normal. Further, there were disagreements between [Weidner] and Jurgonski and Fredlake as to certain accounting principles. However, such disagreements are probably to be expected in any profession. There was no evidence that the disagreements were extraordinary.

In short, there was no evidence that any client suffered any disadvantage or harm. Both Daniel Weidner and Jared Weidner speculated that a few of the errors could have potentially harmed clients. However, no actual harm was demonstrated. Certainly, there was no evidence that the errors had a "meaningful effect on the ability of [Weidner] to serve its clients."

*Id.* at 34. Thus, the trial court concluded that Weidner had not terminated the employment of Jurgonski and Fredlake for cause, "as that term is used in the employment agreements." *Id.* at 36.

[9] Weidner timely filed a notice of appeal,[1] but while that appeal was pending, Weidner moved to remand this case to the trial court for consideration of a Trial Rule 60(B)(2) motion. Weidner alleged that it had newly discovered evidence to support its argument that it had fired Jurgonski and Fredlake for cause. We granted Weidner's motion.

[10] At a hearing on Weidner's Trial Rule 60(B)(2) motion, Weidner argued that it had found the following alleged newly discovered evidence after the September 2016 trial:

- the results of a November 2016 review by Weidner employee Erin McDonald uncovering multiple errors Fredlake had made with respect to 2014 tax returns filed on behalf of Weidner's clients ("2014 tax return errors")

---

[1] The trial court found that there was no just reason to delay an appeal and entered final judgment under Trial Rule 54(B).

- the results of a December 2016 peer review audit uncovering multiple errors Jurgonski had made in the course of his employment that Weidner had not discovered prior to the audit ("peer review audit results")

- Weidner employee Chad McDonald's discovery on January 11, 2018, that, in February 2016, Jurgonski had deleted audit procedures suggested by an auditing computer program in the course of performing an audit for Weidner ("Jurgonski audit errors")

At the conclusion of the hearing, the trial court denied Weidner's Trial Rule 60(B)(2) motion. This appeal ensued.

## Discussion and Decision

### *Issue One: Declaratory Judgment*

[11] Weidner first contends that the trial court erred when it concluded that Weidner had not fired Jurgonski and Fredlake for cause. The court's judgment followed an evidentiary hearing at which the court heard witness testimony, and the court's judgment includes findings of fact and conclusions thereon. Our "usual review" of such judgments is under the clearly erroneous standard. *Anderson v. Wayne Post 64, Am. Legion Corp.*, 4 N.E.3d 1200, 1206 n.6 (Ind. Ct. App 2014), *trans. denied*; *see, e.g.*, *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015).

[12] As the Indiana Supreme Court has explained, under the clearly erroneous standard we apply "a two-tiered standard of review by first determining whether the evidence supports the findings and then whether the findings support the judgment." *Masters*, 43 N.E.3d at 575 (quotation marks omitted).

"[D]ue regard shall be given to the opportunity of the trial court . . . to judge the credibility of the witnesses." *Id.* "[W]e will reverse only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks omitted). However, we review the trial court's conclusions on questions of law *de novo*. *Gertiser v. Stokes (In re Marriage of Gertiser)*, 45 N.E.3d 363, 369 (Ind. 2015).

[13] Weidner's argument on this issue is two-fold. Weidner first contends that the trial court "misinterpreted the 'cause' provision" in the employment agreements to require a showing that its clients were actually harmed as a result of the alleged errors made by Jurgonski and Fredlake. Appellant's Br. at 25. Weidner also contends that, had the trial court correctly interpreted and applied the for cause provision, it would have concluded that Weidner had fired Jurgonski and Fredlake for cause. We address each contention in turn.

*Interpretation of For Cause*

[14] Weidner maintains that the trial court misinterpreted for cause under the employment agreements "to require actual harm" to Weidner's clients. Appellant's Br. at 27. Weidner asserts that such an interpretation was erroneous because under the employment agreements a "'for cause' condition violation" does not require a showing of actual harm to Weidner's clients but

the violation must have had "a meaningful effect on the ability of [Weidner] to serve its clients."[2]  Appellant's App. Vol. II at 211.

[15]     In support of that contention, Weidner asserts that the trial court concluded in error that Weidner "had not shown cause [in firing Jurgonski and Fredlake] *because* 'there was no evidence that any client suffered any disadvantage or harm.'"  Appellant's Br. at 25 (emphasis added) (quoting Appellant's App. Vol. II at 34).  While Weidner correctly quotes the trial court, Weidner mischaracterizes the court's statement when it is read in context.  The trial court did not state, "Weidner did not prove that it fired Jurgonski and Fredlake for cause *because* there was no evidence that any client suffered any disadvantage or harm."  Rather, in the context of its findings and conclusions, the trial court found no evidence of actual harm related to only one category of misconduct against Jurgonski and Fredlake.  In particular, with respect to Weidner's allegations that Jurgonski and Fredlake had made errors and had engaged in disagreements with Weidner, the trial court noted a lack of evidence of "disadvantage or harm" to "any client" as a result of "errors" and

---

[2]  Weidner did not include a transcript from the hearing on the for cause declaratory judgment action, so we do not know what argument, if any, Weidner made to the trial court in support of any particular interpretation of this provision of the employment agreements.  On appeal, Weidner asserts that the "purpose of [the language of the provision] is to prevent ticky-tack terminations; it does not require that Jurgonski's and Fredlake's screw-ups actually have harmed clients."  Appellant's Br. at 27.

"disagreements," and the court found that "no actual harm was demonstrated" despite evidence of potential harm.[3] Appellant's App. Vol. II at 34.

[16] Weidner acknowledges that "evidence of harm to clients could show an effect on Weidner['s] ability to serve its clients." Appellant's Br. at 28. In other words, Weidner concedes that evidence of actual harm to clients is a relevant consideration with respect to the for cause determination. Thus, the trial court's findings of no actual harm with respect to some of Weidner's claims of misconduct are appropriate and do not indicate a misinterpretation of the employment agreements' definition of for cause. Appellant's Br. at 28. And, significantly, the trial court not only found no actual harm but also found "no evidence that the errors had a 'meaningful effect on the ability of [Weidner] to serve its clients.'" *Id.*

[17] In sum, in context, the court's statements regarding the lack of evidence of "disadvantage or harm" to clients belies Weidner's contention that the court misinterpreted the for cause provision. On the issue of whether Weidner fired Jurgonski and Fredlake for cause, the trial court did not define that phrase to require a showing of actual harm to clients. Rather, consistent with the definition of for cause found in the employment agreements, the trial court considered five categories of Weidner's allegations and expressly concluded in each instance that the evidence showed that the alleged errors by Jurgonski and

---

[3] The trial court did not make findings of no actual harm with respect to the four other categories of allegations addressed in the findings and conclusions.

Fredlake did not have "a meaningful effect on the ability of [Weidner] to serve its clients." *Id.* at 33-35. We hold that the trial court did not misinterpret for cause to require proof of actual harm to Weidner's clients.

*Application of For Cause*

[18] Weidner further contends that the trial court erred when it concluded that Weidner had not fired Jurgonski and Fredlake for cause. In support of that contention, Weidner cites evidence that Jurgonski and Fredlake had committed "several non-trivial errors" while employed at Weidner, including: "[c]ontriving a phantom $35,554.80 deduction for property-tax payments that never existed"; "[m]issing $119,432 in income that made an $8,000 difference in the taxes the client had to pay"; "[i]gnoring nearly $200,000 [in] capital losses that needed to be carried over"; and "[f]ailing to record $3.2 million in loans on a client's balance sheet." Appellant's Br. at 29. Weidner acknowledges that it had "(fortunately) caught" these errors "before any clients got hurt[,]" but Weidner asserts that the errors had a meaningful effect on the ability of Weidner to serve its clients because they "wasted valuable time," "caused stress" on Weidner's staff and "hostility with clients," and resulted in the filing of 300 extensions on clients' 2015 tax returns. Appellant's Br. at 30.

[19] But the trial court ultimately found and concluded as follows: "Having carefully weighed all of the evidence presented, the Court finds that the testimony and other evidence presented by Jurgonski and Fredlake was the most credible evidence presented. None of their actions had a meaningful effect on the ability of [Weidner] to serve its clients." Appellant's App. Vol. II at 35.

Weidner's contentions on appeal amount to a request that we reweigh the evidence, which we cannot do. The trial court's declaratory judgment in favor of Jurgonski and Fredlake on the for cause issue is not clearly erroneous.

### Issue Two: Newly Discovered Evidence

[20]     Weidner contends that the trial court abused its discretion when it denied its Trial Rule 60(B)(2) motion to set aside the declaratory judgment. Weidner maintains that the trial court should have set aside the declaratory judgment based upon alleged newly discovered evidence Weidner presented at the hearing on its motion. Our standard of review is well settled:

> Our review of a trial court's decision on a motion for relief from judgment pursuant to Trial Rule 60(B) is limited to determining whether the trial court abused its discretion. *Hill v. Ramey*, 744 N.E.2d 509, 513 (Ind. Ct. App. 2001). Thus, we will reverse the judgment only if it goes against the logic and effect of the facts or the trial court has misinterpreted the law. *Id.* Further, we will not reweigh the evidence, and we give the trial court's order substantial deference. *Id.* When a new trial is sought based on newly[]discovered evidence, the appellant must show, among other things, that the evidence could not have been discovered before the trial by the exercise of due diligence. *Elkhart Cmty. Sch. v. Yoder*, 696 N.E.2d 409, 415 (Ind. Ct. App. 1998). A bare assertion that reasonable diligence has been used is insufficient to show due diligence; the appellant must set out facts showing due diligence has been exercised. *Id.* Moreover, a finding of due diligence does not rest upon abstract conclusions about, or assertions of, its exercise but upon a particularized showing that all the methods of discovery reasonably available to counsel were used and could not uncover the newly[]found information. *Tyson v. State*, 626 N.E.2d 482, 485 (Ind. Ct. App. 1993) (quoting *Lyles v. State*, 576 N.E.2d 1344, 1349 (Ind. Ct. App. 1991)).

*Hartig v. Stratman*, 760 N.E.2d 668, 671 (Ind. Ct. App. 2002), *trans. denied*.

At the January 17, 2018, evidentiary hearing on Weidner's Trial Rule 60(B)(2) motion, Weidner proffered evidence that it had allegedly discovered for the first time after the September 2016 bench trial. Again, that evidence consisted of the 2014 tax return errors, the peer review audit errors, and the Jurgonski audit errors.

Weidner asserts two grounds in support of its contention that the trial court abused its discretion when it denied its motion to set aside the judgment. Weidner first contends that two of the trial court's conclusions "are based on a mistaken understanding of Indiana law." Appellant's Br. at 33. And Weidner also contends that, had the trial court "applied the correct legal framework[,] . . . it should have concluded that the accounting errors that [Weidner] uncovered after trial qualified as newly discovered evidence." *Id.* at 35. We address each contention in turn.

*Legal Analysis*

Weidner contends that the trial court misunderstood the law on what constitutes newly discovered evidence because it: (1) "hinged its analysis on what it believed to be 'most important,' namely, that the records in which the errors were discovered were 'in the exclusive possession and control of' Weidner . . . before trial"; and (2) "concluded that the December 2016 peer review could not be 'newly discovered evidence' because that peer review was not in existence at the time of the September 2016 trial." Appellant's Br. at 32-

33. In support of those contentions, Weidner asserts, correctly, that "*post*-trial analysis of evidence in a party's possession *before* trial can qualify as newly discovered evidence." *Id.* at 33 (emphases original). However, Weidner's attempts to analogize the alleged newly discovered evidence in this case to that in *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265 (Ind. 2008), and *Bunch v. State*, 964 N.E.2d 274 (Ind. Ct. App. 2012), *trans. denied*, is unavailing.

[24] In *Speedway*, the proffered newly discovered evidence involved test results obtained by Speedway analyzing a stain on a pair of jeans that Speedway had not known existed until the first day of trial and that had been in the plaintiff's exclusive possession at all times. 885 N.E.2d at 1272. In contrast, here, as the trial court correctly found, all of the alleged newly discovered evidence was in Weidner's possession at all times, and the information found as a result of the December 2016 audit could have been found prior to trial. *See Hartig*, 760 N.E.2d at 671. And in *Bunch*, the newly discovered evidence was the result of advances in science, particularly fire victim toxicology analysis, that did not exist until after the defendant's trial and was, therefore, not discoverable prior to trial. 964 N.E.2d at 285. In contrast, here, Weidner does not allege any advances in accounting audit procedures that would have made the alleged newly discovered evidence impossible to find prior to trial. Simply put, neither *Speedway* nor *Bunch* supports Weidner's contention on this issue. We hold that the trial court understood and correctly applied the law when it concluded that the proffered evidence was not newly discovered.

*Abuse of Discretion*

[25]     Weidner next contends that the trial court abused its discretion when it concluded that the proffered evidence was not newly discovered. In particular, Weidner asserts that "it was simply not possible for [Weidner] to do a special review" of the 2014 tax returns prepared or reviewed by Fredlake prior to trial. Appellant's Br. at 36. And Weidner maintains that it "could not have had a peer review performed before" November 2016. *Id.* at 39. But the trial court found Weidner's evidence not credible and rejected those arguments, and Weidner's contentions on this issue amount to another request that we reweigh the evidence, which we cannot do.

[26]     "We have long recognized that a litigant is obliged 'to search for evidence in the place where, from the nature of the controversy, it would be most likely to be found.'" *Hartig*, 760 N.E.2d at 671 (quoting *Elkhart Cmty. Sch. v. Yoder*, 696 N.E.2d 409, 415 (Ind. Ct. App. 1998)). Here, the evidence supports the trial court's determination that Weidner could have found all of the alleged newly discovered evidence had it searched its own files in preparation for trial. Indeed, Weidner presented evidence at the September 2016 trial regarding multiple errors Jurgonski and Fredlake had made with respect to 2015 tax returns. As the trial court found, those errors "should have alerted [Weidner] that there might be similar alleged deficiencies with respect to the 2014 Tax Returns. Weidner was on inquiry notice. Yet, no effort whatsoever was made to review 2014 Tax Returns prior to the Trial." Appellant's App. Vol. II at 43.

[27]    Further, with respect to the "hidden" deletions Jurgonski had made in the course of an audit in February 2016, Weidner employee Chad McDonald testified that, if he had looked for that evidence prior to his discovery of it in January 2018, he "could have found it." Tr. at 221. And the trial court rejected Weidner's argument that it could not have found the errors Weidner employee Erin McDonald discovered in November 2017 prior to trial because of a lack of manpower. The evidence shows that Erin found the errors after spending fifty-nine hours looking at Weidner's files. And, as the trial court found, if Weidner did not have the staff to do the review prior to trial, it could have hired someone to do it. Finally, the evidence shows that Weidner could have, in preparation for trial, performed its own audit like the one performed in December 2016. As the trial court found, Weidner "simply chose not to review those records prior to Trial." Appellant's App. Vol. II at 45.

[28]    We hold that Weidner has not shown that the trial court abused its discretion when it denied Weidner's motion to set aside the declaratory judgment under Trial Rule 60(B)(2).

## Conclusion

[29]    Weidner presented evidence that Jurgonski and Fredlake committed numerous errors, some of which may have been sufficient grounds to fire Jurgonski and Fredlake for cause under the common law employment at will doctrine. But the parties' employment agreements controlled here and defined termination for cause to require proof that inaccurate work or other errors had "a meaningful effect on the ability" of Weidner to serve its clients. The trial court found

Jurgonski and Fredlake's evidence more credible than Weidner's evidence on that issue and entered judgment for Jurgonski and Fredlake. We cannot reweigh the evidence on appeal, and we affirm the trial court. Further, Weidner has not demonstrated that the trial court abused its discretion when it denied Weidner's Trial Rule 60(B)(2) motion to set aside the declaratory judgment.

[30] Affirmed.

Crone, J., and Pyle, J., concur.